THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE LEE MATTHEWS, Defendant-Appellant.

First District (5th Division)   No. 84—0050

Opinion filed October 25, 1985.—Modified on denial of rehearing November 22, 1985.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Maureen A. Harton, and Karyn Stratton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant Eddie Lee Matthews was convicted of deviate sexual assault, attempted rape and robbery. (Ill. Rev. Stat. 1981, ch. 38, pars. 11—3, 8—4, 11—1, 18—1.) He was sentenced to an extended term of 60 years' imprisonment for deviate sexual assault, 30 years for attempted rape and 7 years for robbery. On appeal, defendant contends that the police lacked probable cause to arrest him; that the trial court erroneously permitted evidence of other crimes to be introduced; that the court erroneously failed to suppress irrelevant evidence; and that the trial court abused its discretion in sentencing him to an extended term of imprisonment. Facts pertinent to our decision follow.

On October 16, 1982, Chicago police detectives Edward Winstead and William Tock were assigned to investigate a series of armed robberies in the vicinity of the 59th Street station for the Illinois Central Railroad (IC). At about 10 o'clock that morning, they went to the 59th Street underpass in response to a radio call indicating that a black male in dark clothing had exposed himself. When the detectives arrived at the underpass, they saw defendant, a black male wearing a shiny black jacket and blue jeans. Winstead testified that he noticed a small nickel-plated gun in defendant's right hand. He approached defendant and ordered him to drop the gun. According to Winstead, defendant attempted to conceal the gun as he moved away from the detectives. Winstead again ordered defendant to drop the gun. Defendant crouched, then stood up and held his hands high. Tock retrieved the gun and Winstead handcuffed defendant.

Winstead testified that as he was handcuffing defendant, he noticed that defendant matched a description of the IC robber. That description was of a young black male with "gheri-curled" hair and a silver hand-

gun. Winstead entered the IC station, approached the ticket agent, F.K., and asked if she had just been robbed; F.K. said that she had not, but that she had been robbed about a month earlier. Winstead asked F.K. to view a lineup when she finished working. The detectives then took defendant to the woman who complained of the indecent exposure, but she did not identify him. The gun recovered by Tock turned out to be a toy, and it was intertwined with a nylon mesh stocking cap.

Defendant participated in a lineup in the afternoon of October 16, but F.K. and another IC ticket agent both failed to identify defendant as the IC robber. However, F.K. identified defendant as the man who had exposed himself to her two weeks earlier. During another lineup later that day, P.J., the victim of an attempted rape and deviate sexual assault, identified defendant as her attacker. Defendant was placed in yet another lineup on November 3, 1982, and was identified by D.S., the complainant, in the instant cause.

Before trial, the State moved to include the testimony of F.K. and P.J. on the grounds that F.K.'s testimony would show the circumstances surrounding defendant's arrest and P.J.'s testimony would show defendant's identity through *modus operandi*. Defendant filed motions *in limine* to prevent this testimony from being introduced and to suppress a steno notepad recovered from his home. The steno pad contained diary entries in defendant's handwriting from March 9, 1981, through October 22, 1981, as well as a map of the IC complex at Illinois Center. Defendant argued that the material was irrelevant and sought to prevent the State from using it to impeach him on the stand. The trial court granted the State's motion to include the testimony of F.K. and P.J., and denied defendant's motions *in limine*.

At trial, D.S. testified that she arrived at Three Illinois Center, a north loop office building, at 7:30 a.m. on March 26, 1982. She stated that defendant followed her into an elevator and then entered her office and threatened her with a small silver-plated gun. He forced her into the mens' restroom, where he robbed her, forced her to lie down on the floor, undressed her below the waist, performed cunnilingus and was attempting to have intercourse with her when another man entered the restroom. Defendant fled.

P.J. testified that she arrived at 185 North Wabash Avenue at about 7:30 a.m. on February 5, 1982. She stated that defendant followed her into an elevator. When the doors opened at the 12th floor, defendant looked out, then displayed a small silver-plated gun and ordered her out of the elevator. He first demanded her money, then ordered her to perform fellatio. She refused, and defendant ordered her to lie down on the floor, where he undressed her below the waist and attempted intercourse. When another elevator stopped and a man walked out, defend-

ant fled.

F.K. testified that she viewed a lineup in order to identify a robber, but instead she identified defendant as the man who had exposed himself to her several weeks earlier. Many other witnesses testified for the prosecution and the defense, but their testimony is not relevant to the issues in this appeal. Defendant did not take the stand.

The jury returned verdicts of guilty as to the deviate sexual assault, attempted rape and robbery of D.S. After a sentencing hearing, the trial court found that defendant's conduct was "exceptionally brutal *** heinous *** and indicative of wanton cruelty." Therefore, the court imposed an extended sentence of 60 years' imprisonment for deviate sexual assault. Defendant filed a timely notice of appeal.

OPINION

Defendant first contends that the lineup identification of F.K., P.J., and D.S. should have been suppressed because the police lacked probable cause to detain him after the initial indecent exposure victim failed to identify him. The State responds that the police had probable cause to believe that defendant committed robbery as well as public indecency, and so they could legally detain him for robbery even though he was no longer a suspect for indecent exposure. Once F.K. identified defendant as the perpetrator of an earlier crime, the State maintains, the police had probable cause to hold him and to compel his participation in the subsequent lineups.

■ The State has the burden to show that a warrantless arrest was based on probable cause. (See *Beck v. Ohio* (1964), 379 U.S. 89, 97, 13 L. Ed. 2d 142, 148, 85 S. Ct. 223, 228-29.) In order to determine whether a warrantless arrest meets the probable cause requirement, the trial court must decide whether a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) Judicial experience teaches that in making this decision, the court should take a common sense view of the totality of the circumstances. (See *Illinois v. Gates* (1983), 462 U.S. 213, 230-39, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2328; *People v. Tisler* (1984), 103 Ill. 2d 226, 236-41, 469 N.E.2d 147.) Once the probable cause determination has been made by the trial court, a court of review will not disturb it absent manifest error. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.

■ Applied to these facts, we cannot find fault with the trial court's assessment of probable cause. The arresting detectives were familiar with the facts and actively involved in the investigation of four recent robberies in the vicinity of the 59th Street IC station. They knew

that the robber had been described as a young black male with "gheri-curled" hair, and that he used a silver handgun. The detectives responded to a report of indecent exposure in the 59th Street IC underpass, and when they arrived at the scene, their focus narrowed to defendant, who fit the general description of the flasher. Before defendant was restrained in any way, Winstead observed a gun in defendant's hand. The detectives ordered him to drop the gun, but defendant instead attempted to conceal it and flee. Closer examination revealed that defendant answered the description of the IC robber. In view of defendant's proximity in time and space to a series of robberies, his possession of an ersatz silver gun, his conduct evincing guilty knowledge, and the fact that he fit the description of the IC robber, we conclude that the police had probable cause to hold him for identification by the victims of the robberies. Therefore, the trial court properly refused to suppress defendant's lineup identifications.

■ Defendant next contends that the trial court erred in permitting F.K. and P.J. to testify that he committed other crimes. Evidence of other crimes is inadmissible to show a propensity to engage in criminal activity, but such evidence may be admitted for other relevant purposes. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Other crimes evidence has been held admissible to show knowledge, intent, motive, design, identity or *modus operandi* (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489) and has also been admissible when relevant to police investigation if the evidence is an integral part of the narrative of the arrest. (See *People v. Davis* (1981), 93 Ill. App. 3d 187, 190, 416 N.E.2d 1179; *People v. Morthole* (1977), 51 Ill. App. 3d 919, 932, 366 N.E.2d 606.) The trial court must be afforded some latitude in assessing relevance, and a reviewing court should not reverse unless an abuse of discretion appears. (See *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696.) We cannot say that the trial court abused its discretion in ruling that the testimony of F.K. and P.J. was admissible.

■ We find that F.K.'s identification of defendant as a flasher was relevant to explain defendant's detention during subsequent identifications. The record reveals that defense counsel sought to impress the jury with the arbitrariness of defendant's arrest, apparently as part of a larger attempt to explain how an innocent man could be trapped by circumstance. This underlying theme is common in trials which pit identification testimony against alibi witnesses. The trial court properly permitted the State to dispel this impression with a narrative of the investigation.

■ With respect to P.J.'s testimony, defendant argues that there was nothing so peculiar or distinctive about the crimes as to justify the

trial court's finding of *modus operandi*. To be probative on the identification issue, the similarities between the two crimes must be so striking that the crimes appear distinctively identical and can be earmarked as the crime of one person. (*People v. Connors* (1980), 82 Ill. App. 3d 312, 318, 402 N.E.2d 773.) In Illinois, such evidence may be admitted "only upon a strong and persuasive showing of similarity." (*People v. Tate* (1981), 87 Ill. 2d 134, 141, 429 N.E.2d 470.) Here, two women testified that they were attacked in north loop office buildings at 7:30 a.m. during the work week. In each case, the perpetrator followed his victim into an elevator, and threatened her with a small silver gun. The attacker first robbed his victim, then demanded or performed oral sex, then attempted intercourse. The crimes occurred within weeks of one another, and both victims identified defendant. Considering the circumstances and pattern of events in their entirety, we conclude that the trial court properly admitted P.J.'s testimony as proof of *modus operandi*. See *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251; *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.

■ Defendant next contends that the trial court erred in refusing to inspect and exclude a steno notepad which was recovered from his home. According to defendant, the court's failure to suppress the steno pad deprived him of his right to testify. We find no merit in defendant's argument.

Defendant's motion *in limine* was based entirely on relevance. In the motion, he characterized the content of the notepad as a series of diary-like entries made during 1981, and a map of the lobby of the Illinois Center complex. During a hearing on the matter, the State argued that the notepad would be relevant as impeachment if defendant took the stand. Defendant requested a ruling before he decided whether to take the stand. The trial court stated, "you are requesting me to rule on something that hasn't even come up yet," and then, "it's a question of what questions they put to the witness based on information that they get from it and you still have a right to object if the question is not proper."

We agree with the trial court. It is obvious to us that the relevance of impeachment cannot be determined until the witness has testified. Because defendant did not testify, it is impossible to determine whether or not the notepad was relevant. Therefore, defendant can demonstrate no error.

■ Finally, defendant contends that the crimes were not so brutal or heinous as to warrant the extended-term sentence imposed by the trial court. The Illinois General Assembly authorizes an extended-term sentence for any felony conviction where "the trial court finds that the

offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) However, our supreme court has held that this language was not intended to enhance the penalty for every offense. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Instead, the court has interpreted the language in conjunction with other sentencing provisions to mean that "when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class and only if that offense was accompanied by brutal or heinous behavior." *People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569.

■ Defendant was convicted of deviate sexual assault (a class X offense), attempted rape (a class 1 offense) and robbery (a class 2 offense). (See Ill. Rev. Stat. 1981, ch. 38, pars. 11—3, 8—4, 11—1, 18—1.) Deviate sexual assault was the most serious crime of which defendant was convicted, and so it was error to sentence him to an extended term for attempted rape. Further, there is no evidence that the deviate sexual assault of D.S. was accompanied by brutal or heinous behavior beyond the assault itself. Accordingly, we vacate defendant's extended-term sentences for deviate sexual assault and attempted rape, and remand for resentencing.

In *People v. Killen* (1982), 106 Ill. App. 3d 65, 435 N.E.2d 789, the defendant was convicted of deviate sexual assault, attempted rape and robbery, just as the defendant in this case. This court stated in *Killen*:

"Certainly, crimes such as the one in the instant case are shocking and reprehensible and represent a serious problem in our society. While the underlying crime itself demonstrates a callousness on the part of the defendant and is repugnant to society, we cannot say in the instant case that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The victim was not battered and apparently received no physical injury. No doubt, the victim has suffered deep and permanent emotional scars. While we empathize with the trial court's efforts to deter others from crimes of this nature, to say that every such crime is accompanied by heinous behavior indicative of wanton cruelty would be to divest the court of any discretion in the sentencing process." 106 Ill. App. 3d 65, 68.

For the foregoing reasons, we affirm defendant's convictions and his sentence for robbery; defendant's sentences for deviate sexual assault and attempted rape are vacated and remanded for resentencing.

Affirmed in part; vacated in part and remanded.

MEDJA, P.J., and SULLIVAN, J., concur.