THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT MILLER, Defendant-Appellant.

First District (2nd Division)   No. 1—92—1959

Opinion filed February 22, 1994.

Rita A. Fry, Public Defender, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William John Healy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

A jury found defendant Robert Miller guilty of first degree murder. He was later sentenced to 28 years in prison. On appeal, he contends that (1) the circuit court improperly limited cross-examination of the investigating officer; (2) his proposed jury instructions on provocation from a third party and standing his ground when assaulted should have been given; (3) the prosecutor's comments during rebuttal argument prejudiced his right to a fair trial; and (4) the circuit court improperly admitted evidence of a lineup identification of a person not charged in this case. We affirm.

The following evidence was adduced at trial. Lamar Blount testified that on March 24, 1988, he and his cousin, Calvin Winston, the deceased in this case, were on the playground of a housing project known as the Robert Taylor Homes, located at 4946 South State Street in Chicago. They were drinking beer. Blount saw his friend Stevie Lemons on the porch of his apartment and called to him to come downstairs.

After Blount called to Lemons, a group of about 12 young men, including defendant, whom Blount had known for about a year, came through the playground. Defendant said something to him about gangs, but he told defendant he was not a member of a gang. He had been a member of the Maniacs a year earlier, and he had become a member of the Vice Lords when he went to prison for armed robbery. Defendant was a member of the Gangster Disciples.

Blount and defendant exchanged words, and then got into a fistfight which lasted three or four minutes. Blount saw a man give defendant a dark metal gun and also heard defendant tell the other man, "Give me that."

Defendant came running toward Blount firing the gun. He did not have a gun himself that night, although he had carried one on previous occasions. Winston did not have a gun, either, and he and Winston responded to defendant's shots by throwing bottles at him. After Winston threw a bottle, he turned around and ran. When Blount turned around, he saw Winston on the ground, with blood coming out of his mouth.

Lemons testified that he saw the fight and that he and Winston helped to break it up. Defendant was with about six or seven other

men, and Lemons saw a man hand what looked like a gun to defendant. Before the shooting began, he saw his sister Alicia standing next to defendant and heard her say, "Don't shoot my brother." Lemons then saw defendant push Lemons' sister to the ground, aim the weapon toward the building, and fire a shot into the air. He saw that Blount and Winston were running away, with their backs toward defendant, and defendant began running after them while shooting. Lemons saw defendant aim the gun in the direction Winston was running and fire more shots. He then saw defendant and his group running away.

Lemons later identified defendant as the shooter in a lineup, and he also identified Nelson Connors as a man who was present at the scene on the night of the killing.

Officer Richard Kimball testified that he and his partner arrived on the scene and found a crowd of people standing around Winston. They checked him for weapons and identification, but found none. Kimball did not search Blount for weapons. Blount told him that the shooter was between 16 and 18 years old, approximately 6 feet tall, wearing a blue jacket with dark pants, with a short haircut. Blount also told him the shooter's name was "Rob."

Detective Guy Habiak testified that, after he learned that Winston had died, he examined him and found that the gunshot wound was in the back of his left shoulder. After determining that the shooter's full name was Robert Miller, he showed Blount a photographic array containing defendant's picture, and Blount identified defendant as the shooter. Lemons also identified defendant from the photographic array. As a result of these identifications, Habiak obtained a warrant for defendant's arrest and continued trying to locate him.

On June 13, 1988, Habiak received a telephone call, and thereafter went to the third-floor apartment of Sandra Nelson at 135 West 68th Street. He spoke with Nelson, she let him into the apartment, and he conducted a search. He found defendant in a hall closet underneath some clothes. In later conversations with Habiak, defendant told him that Nelson Connors and a man called Gonzales were present at the scene of the shooting. Defendant first told Habiak that Gonzales shot and killed Winston, but later admitted that he was the shooter.

Detective David Kutz testified that he arranged a lineup at the police station. He placed Nelson Connors, also known as Pep, in the lineup along with defendant. Lemons identified defendant as the shooter and Connors as another man who was present at the scene.

Assistant State's Attorney Darren O'Brien of the felony review

unit testified that he had a conversation with defendant. Defendant was given his *Miranda* warnings and then admitted that he shot at Winston. Defendant told him that Winston was running away, but that Winston was shooting at him while running backwards.

Winston's mother, Thelma Winston, testified as a life and death witness. Dr. Shaku Teas, an assistant medical examiner, testified that she performed an autopsy on Winston and that he had a wound from a distant gun on his back about three or four inches down from the top of the left shoulder. Dr. Teas recovered a small caliber bullet from the body. The gunshot wound was the cause of death.

Called as a defense witness, Ites Chapman, a member of the Black Gangster Disciples, testified that he and defendant were close friends who saw each other four or five times a week. On March 24, 1988, at 10 p.m., he was with defendant, Connors, and several others. They went to 4946 South State Street in order to see two young women. Blount and Winston came up behind them, and Blount argued with one of the young men. Blount and defendant began arguing, and then fighting.

Winston pulled out a .38-caliber handgun. After the fight broke up, Chapman, defendant, and the others with them started to walk away. Defendant was given a gun by someone Chapman did not know. Winston fired the first shot and then defendant fired into the air. Defendant shot a second time and then Winston fired again. Winston then started running and gave Blount the gun. Blount shot at defendant three times, and defendant also fired three more shots.

Chapman said the shots fired by Winston and Blount sounded like they came from a .38-caliber weapon. After defendant finished firing, he and Chapman ran away. While they were running, defendant gave the gun back to the stranger who had given it to him.

Defendant testified that on March 24, 1988, he was a member of the Black Gangster Disciples. At 10 p.m. on that day he went to the Robert Taylor housing project to see two young women. He went with Chapman, Connors, and two others. When he got there he began talking with the two young women, and he spoke briefly with Winston. He heard Blount arguing heatedly, and he thought Blount was going to shoot him. When defendant disagreed with Blount, Blount took a swing at him and missed, and defendant struck back.

Blount yelled to Winston to give him the gun. Connors came up and told Winston to let them fight because defendant did not have a gun. Defendant saw that Winston had a gun and he was afraid he might get shot; however, he did not leave. After the fight broke up, defendant and his friends started to walk away.

A group of people then approached him, and he began arguing

with them. Winston then stepped out of the crowd of people and held a gun in defendant's face. A woman stepped in front of Winston and told him not to shoot defendant, and then someone handed defendant a gun. He did not know the person who handed him the gun, but he knew the man by his nickname.

He then heard some gunshots and fired into the air to let them know he had a gun. He did not see who fired the first shot. He fired into the air in order to make the man who was pointing the gun at him stop shooting at him. Defendant heard additional gunfire and fired back. After shooting in the direction of Winston, he ran away. As he was running away, he gave the gun back to the person who had given it to him.

Defendant knew the police were looking for him. On June 13, 1988, he was asleep in Sandra Nelson's apartment when the police arrived. He was told he should go into the closet, and Nelson pushed him into it. He was sitting in the closet with the door closed but with no clothes over his head when the police opened the closet door.

After his arrest, defendant first told the police that Gonzales had shot and killed Winston, but he admitted at trial that there was no such person. Later, defendant told the assistant State's Attorney that he was the shooter. He did not, however, say that Winston was running away from him at the time defendant fired the gun.

Thomas Brice, an attorney for the public defender's office, testified that he was present in March 1992 for a conversation between Blount and Anthony Eben, one of the attorneys representing defendant. Blount told Eben that, during his fistfight with defendant, Winston was coaching him. Blount told them that the gunshots sounded like a .38-caliber weapon. He also told Eben that he had been a member of the Vice Lords on March 24, 1988.

Richard English, an investigator with the public defender's office, also testified. On March 27, 1992, he went to speak to Lemons with one of the defense attorneys in the case. Lemons said at that time that he was a member of the Disciples.

The parties stipulated that Winston had been convicted of the misdemeanor offense of unlawful use of a weapon and that defendant had been previously convicted of a felony offense.

As previously noted, the jury returned a verdict of guilty of first degree murder, and defendant was sentenced to 28 years' imprisonment.

I

Defendant first contends that the circuit court improperly precluded cross-examination of a detective regarding whether his

investigation showed that there was more than one gun used in the incident. Defendant asserted self-defense. The State's theory of the case was that there was only one gun involved and that defendant was the one who fired it and killed Winston. Evidence of a second gun would have bolstered the credibility of his theory, defendant asserts, and he was substantially prejudiced by the limitation imposed on cross-examination. Thus, defendant asserts that he was denied a fair trial.

The State responds that the offered evidence was too speculative to be admitted and that the court did not abuse its discretion in excluding it.

Defendant is entitled to confront his accusers effectively by use of cross-examination. This right, however, is not absolute. (*People v. Gagliani* (1991), 210 Ill. App. 3d 617, 628, 569 N.E.2d 543, *appeal denied* (1991), 139 Ill. 2d 600, 575 N.E.2d 918.) The right to cross-examine a witness does not include the right to test the evidence "in whatever way, and to whatever extent the defense might wish." (*United States v. Briscoe* (7th Cir. 1990), 896 F.2d 1476, 1492, *cert. denied sub nom. Usman v. United States* (1990), 498 U.S. 863, 112 L. Ed. 2d 137, 111 S. Ct. 173.) A circuit court may reject offered evidence on the grounds of irrelevance if it has little probative value because it is too remote or speculative. *People v. Wright* (1991), 218 Ill. App. 3d 764, 771, 578 N.E.2d 1090.

The circuit court is vested with "substantial discretion" to determine both the manner and scope of cross-examination. (*People v. Dortch* (1982), 109 Ill. App. 3d 761, 767, 441 N.E.2d 100.) The circuit court's decision regarding the scope of cross-examination will not be reversed absent a clear showing of abuse of discretion resulting in manifest prejudice to the defendant. *People v. Sandoval* (1990), 135 Ill. 2d 159, 194, 552 N.E.2d 726, *cert. denied* (1990), 498 U.S. 938, 112 L. Ed. 2d 307, 111 S. Ct. 343; *People v. Williams* (1992), 230 Ill. App. 3d 761, 783, 595 N.E.2d 1115, *appeal denied* (1992), 146 Ill. 2d 649, 602 N.E.2d 473.

■ In this case, Detective Habiak had testified on redirect examination that after the shooting, he had no investigative information showing that either Blount or Winston had fired a gun. He testified that on the night of the killing, he did not order a gunshot residue test of either Blount or Winston. During cross-examination, defense counsel sought to elicit information about whether after speaking to defendant and another individual on June 13, 1988, he learned that another gun might have been used in the incident. The State objected to the question, and the court sustained the objection on the grounds that the answer would be too speculative.

Detective Habiak stated that he had no personal knowledge of a second gun and that he had no basis to believe there was a second gun. He was not present at the scene at the time of the shooting. There was certainly a reasonable basis for the circuit court to find that any answer to defense counsel's question concerning a second gun, especially one premised on a conversation with defendant and one other person almost three months after the killing, would have been purely speculative. Defendant has not demonstrated that the circuit court abused its discretion in limiting cross-examination of the detective.

## II

Defendant next contends that the circuit court erred in refusing to give two of his proposed jury instructions which related to his theory of self-defense. He asserts that where the instruction concerning sudden and intense passion based on provocation from a third party was based on some evidence in the record, he was entitled to have his instruction given. He further asserts that his instruction based on his right to stand his ground should also have been given.

The State responds that the court properly refused to give defendant's instructions where there was no evidence that the killing was done negligently or accidentally, and where the jury was accurately and sufficiently instructed on self-defense. The State further asserts that even if error occurred, it was harmless.

## A

The jury was instructed on the mitigating factors of unreasonable belief and sudden and intense passion based upon provocation from the victim, which would have reduced the offense from first degree murder to second degree murder if accepted by the jury. The jury was instructed as follows:

> "A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances existed which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable;
>
> or
>
> A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant acts under a sudden and intense passion resulting from serious provocation by Calvin Winston. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."

This was a nonpattern instruction, combining the Illinois Pattern

Jury Instructions, Criminal, Nos. 7.03A and 7.05A (2d ed. 1989 Supp.) (IPI Criminal).

Defendant sought to have the variation on IPI Criminal 2d No. 7.03A (Supp. 1989), based on transferred intent, given in addition:

"A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant acts under a sudden and intense passion resulting from serious provocation by some other person he endeavors to kill, but he negligently or accidentally kills the deceased. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (IPI Criminal 2d No. 7.03A (Supp. 1989).)

The court refused to give the jury this instruction.

A defendant is entitled to an instruction consistent with his theory of the case if there is evidence to support that theory. (*People v. Solis* (1991), 216 Ill. App. 3d 11, 18, 576 N.E.2d 120.) This is true even where the evidence of the theory is inconsistent or of doubtful credibility. (*People v. Williams* (1987), 164 Ill. App. 3d 99, 110, 517 N.E.2d 745, *appeal denied* (1988), 121 Ill. 2d 585, 526 N.E.2d 838.) In a criminal case, even slight evidence will justify the giving of an instruction on a theory. (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 906, 542 N.E.2d 1171, *appeal denied* (1989), 128 Ill. 2d 666, 548 N.E.2d 1072; see also *People v. Lewis* (1992), 229 Ill. App. 3d 874, 888, 594 N.E.2d 414, *appeal denied* (1992), 146 Ill. 2d 642, 602 N.E.2d 466.) Whether or not defendant has introduced sufficient evidence to support an instruction is a question of law. *People v. Shelton* (1985), 140 Ill. App. 3d 886, 890-91, 489 N.E.2d 879.

In this case, defendant's proposed jury instruction was based on the theory that defendant negligently or accidentally killed Winston while trying to kill another due to sudden and intense passion. Any evidence of mutual quarrel, combat, or assault is sufficient evidence of provocation to require a second-degree murder instruction. (*Lewis*, 229 Ill. App. 3d at 880; *People v. Robinson* (1989), 189 Ill. App. 3d 323, 349, 545 N.E.2d 268.) Further, defendant's assertion of self-defense does not negate his right to a second-degree murder instruction based upon provocation. *People v. Ford* (1987), 163 Ill. App. 3d 497, 503, 516 N.E.2d 766.

■ There is evidence in the record that defendant and Winston exchanged gunfire, and defendant admitted twice that he shot at Winston. This was sufficient evidence of mutual quarrel or combat to support the second-degree murder instruction given relating to the provocation from Winston. There is, however, also evidence in the record that Blount fired at defendant, and that Winston was killed

while defendant was returning fire from Blount. This may have been sufficient evidence of mutual quarrel or combat to support the requested second-degree murder instruction relating to provocation from Blount.

The language of the refused instruction regarding provocation from a third party differs from the language of the instruction given regarding provocation from the deceased. The refused instruction is based on transferred intent, which of course requires intent. There was no evidence presented which demonstrated that defendant "endeavored" to kill Blount, and killed Winston "negligently or accidentally." While defendant admitted that he fired at Winston, he never admitted that he fired at Blount; the evidence for the mutual quarrel or combat between defendant and Blount came from defense witness Chapman, who, of course, was not qualified to testify about defendant's intent. Defendant contends that regardless of the source of the evidence, regardless of its doubtful credibility, and regardless of its slight nature, because there was evidence to support the instruction, he was entitled to it.

Despite our reservations about defendant's entitlement to the refused instruction, based upon his failure to supply the intent required by it, if we were to conclude that the circuit court erred in refusing the instruction, any such error was harmless. It is well established that error in giving or refusing instructions is harmless and will not warrant reversal where the evidence of the defendant's guilt is overwhelming, and it is evident that the jury could not reasonably have found defendant not guilty. (*People v. Jones* (1979), 81 Ill. 2d 1, 9, 405 N.E.2d 343; *People v. Velasco* (1989), 184 Ill. App. 3d 618, 633, 540 N.E.2d 521; *People v. Bryant* (1984), 123 Ill. App. 3d 266, 274, 463 N.E.2d 700.) Where the result of the trial would not have been different if the instruction had been given, the refusal to give the instruction is held to be harmless. *Bryant*, 123 Ill. App. 3d at 274.

In this case the evidence establishing defendant's guilt was overwhelming. The jury was fully instructed on the possibility of reduction to second degree murder based upon provocation by Winston, and it rejected the option. It simply did not believe that Winston provoked the killing. The only evidence that the second gun even existed came from defendant and another witness who was his good friend. Even if the jury believed the second gun existed, the evidence submitted by the defense was that Winston fired the first shot, not Blount. If the members of the jury did not believe that Winston provoked the killing, they could not reasonably have believed that Blount did so. Moreover, as previously indicated, although defendant twice testified that he fired at Winston, he never stated that he fired

at Blount. Even if the tendered instruction had been given, then, it is evident that the result of the trial would have been no different. Any error in failing to give the refused instruction, if error at all, was therefore harmless.

### B

Defendant also requested a nonpattern jury instruction reading: "A person who is first assaulted by another has the right to stand his ground, and has no duty to retreat before defending himself." Defendant argues that this proposed instruction accurately states what has been the law in Illinois since 1902. He contends that since the State twice asked him during cross-examination whether he retreated after the first shot was fired, the jury might have believed that he was required to retreat rather than stand his ground. Failure to give the proposed instruction, defendant insists, was thus an abuse of the circuit court's discretion that denied him his right to a fair trial.

The State responds that it is not error to refuse a requested instruction if its principle has been covered accurately and sufficiently by another instruction given; that refusal to give a tendered nonpattern instruction is an abuse of discretion only when the refusal results in the jury not being instructed as to the defense's theory of the case which is supported by some evidence; and that even if refusal to give the instruction was error, it was harmless error.

In this case the jury was properly instructed on defendant's right to self-defense. Had the jury believed that appropriate circumstances existed, it could have found defendant not guilty. The jury was also properly instructed on the possibility of reduction to second degree murder based upon defendant's unreasonable belief that the force he used was justified. It rejected both of these options and found defendant guilty of first degree murder.

The instruction sought by defendant was based upon *People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363. In that case, the court held that had the defendant's instruction accurately stated the law, it should have been accepted. The proposed instruction in *Hughes*, however, failed to state that *only* one who is first assaulted has no duty to retreat. It was thus properly refused because it failed to state the law accurately.

Defendant's proposed instruction suffers from exactly the same infirmity as the instruction that was refused in *Hughes* and was therefore properly refused by the circuit court. It did not state the law accurately, and defendant was not entitled to have it given to the jury.

### III

Defendant next argues that during rebuttal closing argument, the prosecutor made improper statements which (1) misstated the law of second degree murder, self-defense, and sudden and intense passion, and (2) misstated the evidence. Defendant asserts that these remarks were prejudicial and deprived him of a fair trial.

The State responds that the comments were proper because they were based on the evidence or were reasonable inferences drawn from the evidence, or that they were invited by defense counsel's arguments. Further, the State asserts that where the circuit court properly instructed the jury on the law, any error was rendered harmless.

Defendant contends that two comments made by the prosecutor misstated the law in this case. First, the prosecutor stated: "But it's not first degree murder, it's second degree murder. And it's second degree murder because it's self-defense and if you don't believe it's self-defense, um, serious provocation."

Later, the prosecutor stated: "He tells you he wasn't afraid until the gun shots were fired. It was self-defense and serious provocation, and that takes time to happen. They're happening immediately. \*\*\* If you're defending yourself it's 'I have to defend my life.' Serious provocation is immediate emotional reaction."

Defendant objected to both statements, and the court responded both times that the jurors should read the instructions if they were confused about the law.

While a prosecutor has wide latitude in closing argument, he must not make comments which misstate the law in the case. (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 564 N.E.2d 850, *appeal denied* (1991), 136 Ill. 2d 548, 567 N.E.2d 336.) Conceding for the sake of discussion that the comments were erroneous, even a prosecutor's misstatement of the law does not constitute error where the circuit court properly instructs the jury on the law. (*People v. Maloney* (1990), 201 Ill. App. 3d 599, 613, 558 N.E.2d 1277; *People v. Hunley* (1989), 189 Ill. App. 3d 24, 545 N.E.2d 188, *appeal denied* (1990), 129 Ill. 2d 568, 550 N.E.2d 562, *cert. denied* (1990), 498 U.S. 828, 112 L. Ed. 2d 58, 111 S. Ct. 86.) Here, the circuit court properly instructed the jury on the law of second degree murder, serious provocation, and justifiable use of force. Additionally, after each objection by defense counsel, the judge admonished the jury to read the instructions.

■ In this case, then, any misstatements of the law by the prosecutor were cured by the circuit court's proper instruction of the jury.

Defendant's other contention is that the prosecutor misstated the evidence. In closing argument, defense counsel referred to the fact

that Lemons did not come to court until he was arrested for failing to comply with a subpoena. Defense counsel implied that because he did not come to court when he was subpoenaed, he was not worthy of belief. The prosecutor responded that defendant's theory that Lemons was not reliable was just another story in an attempt to exonerate defendant. This response, defendant claims, misstated the evidence and prejudiced him.

In closing argument, a prosecutor may properly comment on the credibility of witnesses and respond to comments from defense counsel which invite response. (*People v. Brandon* (1990), 197 Ill. App. 3d 866, 885, 557 N.E.2d 1264, *appeal denied* (1990), 133 Ill. 2d 561, 561 N.E.2d 696.) In this case, defense counsel challenged the credibility of a witness, and the prosecutor's comment merely responded to the invitation. There was no unfair prejudice.

## IV

Finally, defendant argues that the circuit court admitted irrelevant hearsay evidence regarding the lineup identification of a person who was not charged with an offense in the case, and that this evidence improperly bolstered the prosecution's case, depriving defendant of a fair trial. The State responds that the challenged evidence was relevant to the witness' credibility and thus was properly admissible.

During direct examination, Lemons testified that on June 13, 1988, he viewed a lineup. Over defense counsel's objection, he testified that he not only picked out defendant as the shooter but also identified Connors as having been present at the scene. Over the further objection of defense counsel, Officer Kutz was permitted to testify that Lemons did those things. Defendant claims that while the identification of defendant was appropriate, the identification of Connors was hearsay and irrelevant and could only serve to bolster the State's case impermissibly.

Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 487-88, 568 N.E.2d 864.) The circuit court is afforded wide latitude in assessing relevance (*People v. Matthews* (1985), 137 Ill. App. 3d 870, 875, 485 N.E.2d 403), and it is the function of the circuit court to weigh the probative value and the prejudicial effect of the evidence in determining whether or not it should be admitted. Evidentiary rulings of this nature will not be disturbed absent a clear showing of abuse of discretion. *Gonzalez*, 142 Ill. 2d at 489-90.

■ The disputed evidence here was relevant to the extent that it corroborated Lemons' observations. Defendant testified that he went to the scene with Connors, and the fact that Lemons was able to identify both of them as being at the scene lends credibility to his observations and descriptions. The circuit court so found, and we find no abuse of discretion in that finding.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.