(No. 69351.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONALD EVERETTE, Appellee.

*Opinion filed October 4, 1990.—Modified on denial of rehearing February 4, 1991.*

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, David R. Butzen, Joseph Brent and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Martin Carlson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago (John S. Delnero, of Fagel, Haber & Maragos, and Joel J. Africk and Glenn E. Heilizer, of Jenner & Block, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

The issue before this court is whether a homicide defendant is entitled to an instruction on self-defense when he testifies that he accidentally killed the victim. In *People v. Lockett* (1980), 82 Ill. 2d 546, 551, this court stated that "[a] self-defense instruction is given in a homicide case when there is some evidence in the record which, if believed by a jury, would support a claim of self-defense." We continue to adhere to our statement in *Lockett* and now hold that a homicide defendant is entitled to such an instruction, even where he testifies that he accidentally killed the victim. In the case at bar, we hold that appellee failed to demonstrate sufficient evidence to warrant an instruction on self-defense to the jury and that the trial court's refusal to tender an instruction on the law to the jury was correct. We therefore reverse the appellate court's decision and remand the cause to that court for further proceedings.

In a jury trial in the circuit court of Cook County, appellee, Donald Everette, was convicted for the November 1, 1985, murder of the victim, Johnny Island. Appel-

lee was sentenced to 25 years in the Illinois Department of Corrections.

During the instruction conference at the close of all the evidence, appellee tendered the definitional and issues instructions on self-defense. These instructions included Illinois Pattern Jury Instructions, Criminal, No. 2.01 (2d ed. 1981) (IPI Criminal 2d), which charges murder but includes the offense of voluntary manslaughter; IPI Criminal 2d No. 7.05, the definition of "voluntary"; IPI Criminal 2d No. 7.06, the issues on voluntary manslaughter; IPI Criminal 2d No. 24.06, defining a person's justified use of force; IPI Criminal 2d No. 7.01, the modified definition of murder if an instruction on involuntary manslaughter is given; IPI Criminal 2d No. 7.02, the modified issues on the charge of murder if an instruction on involuntary manslaughter is given; and IPI Criminal 2d No. 24–25.06, modified for a self-defense theory.

Appellant objected, arguing that appellee could not request instructions on self-defense, which requires a showing of intent and volition, and also present evidence demonstrating that the killing was an accident, which requires a showing of *lack* of intent to commit the harm that resulted. The evidence, appellant argued, could not demonstrate both defenses and, therefore, appellee was not entitled to have the charge to the jury contain an instruction on self-defense.

The trial court believed that since the two defenses are, by definition, inconsistent with each other, charging the jury with an instruction on self-defense precluded appellee's right to rely on an accident defense. The court concluded that the evidence demonstrated only an accident defense and denied appellee's motion to instruct the jury as to the law of self-defense. The charge to the jury included instructions for involuntary manslaughter and murder.

Appellee's conviction was reversed on appeal. (187 Ill. App. 3d 1063, 1076.) The majority concluded that appellee presented enough evidence at trial to support a self-defense instruction and that the trial court's denial of appellee's request to so instruct the jury was reversible error. The cause was remanded for a new trial. (187 Ill. App. 3d at 1076.) The dissenting justice said that appellee's testimony was insufficient evidence upon which to instruct the jury on self-defense. (187 Ill. App. 3d at 1076 (McNamara, J., dissenting).) We granted appellant's petition for leave to appeal (107 Ill. 2d R. 315).

At trial, the State introduced evidence to establish the following. On November 1, 1985, at approximately 10 p.m., three men were standing near the breezeway of the Stateway Gardens Housing Project in Chicago where appellee lived. One of the three men was the victim.

Appellee entered the breezeway and approached his mailbox near the entrance to his building. When the victim saw appellee enter the breezeway, he stepped aside and away from appellee. In appellee's presence, the victim and his companions referred to an altercation between the victim and appellee that occurred in June 1985, wherein the victim struck appellee on the side of the head with a wine bottle. The victim and appellee exchanged words regarding the June incident, but appellee retrieved his mail and returned to his apartment without any physical confrontation.

Appellee returned to his mailbox a short time later while the victim and his companions were still in the area. Edward Jeffries, one of the men with the victim, testified that appellee ran towards the men as he descended a ramp from the building in which his apartment was located. Mr. Jeffries testified that he saw appellee pull a black revolver from his pants as he ran towards the men and point it at the victim. The victim turned and began to run from appellee, but slipped and

fell. Mr. Jeffries testified that he then heard a shot. After realizing the victim had been shot, he went to his mother's apartment and called the police. After the shooting, appellee walked back up the ramp leading to his apartment building without speaking to either the victim or his companions.

Appellee introduced evidence at trial to establish the following. When he arrived at his mailbox on the evening of November 1, 1985, the victim and his companions were gathered in the breezeway and began to taunt him about the June 1985 incident. Appellee retrieved his mail and returned to his apartment, where he noticed that two of the three letters retrieved from his mailbox were not addressed to him. Appellee left his apartment to return the misdelivered letters to his mailbox and to get something to eat. Before he left, he concealed a loaded gun in the waistband of his pants under his jacket.

The victim asked appellee what he was doing back downstairs, and when appellee turned to answer the victim, he noticed what he thought was a beer can in the victim's hand. Appellee testified that the victim's hand was at his waist and angled behind his back in what appellee thought was a striking position:

"Q. And what position was [the victim's] arm at that time?

A. It was in a striking position.

Q. Would you stand, please, and show the ladies and gentlemen of the jury what you mean when you say his hands was [sic] in a striking position?

A. Yes.

[Defense counsel]: Indicating, Judge, for the record, arm held about a 45-degree angle from the body, hand at waist height and drawn slightly behind the body."

Appellee testified that he thought that the victim was about to hit him.

Appellee took out his gun, cocked the trigger and pointed it at the victim. As he did so, he took two steps backwards and bumped his shoulder into the mailboxes. The collision caused appellee to fire the gun. Appellee testified that the gun discharged accidentally and that he had only meant to scare the victim with the gun. Appellee heard a scream and then turned and walked upstairs. He went to a neighbor's apartment and asked the woman living in the apartment to take the gun. Appellee then returned to his apartment where he telephoned his brother and mother. His brother came to his apartment and remained there with appellee until he was arrested by the police a few hours later.

A review of the appellate court decisions published in the past few years shows that the court has been divided on whether instructions on self-defense are appropriate where the evidence demonstrates that an accident may have occurred. Several panels of the appellate court have refused to allow a jury to be charged with self-defense instructions where the evidence demonstrates that the homicide was an accident. See, *e.g.*, *People v. Holloway* (1985), 131 Ill. App. 3d 290, 310-11; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 895; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 716-18.

The decision in *People v. Robinson* (1987), 163 Ill. App. 3d 754, reviewed these decisions in an effort to reconcile the apparent split. The *Robinson* court separated the decisions into two categories. In so doing, the *Robinson* court correctly observed that those decisions which refused to instruct the jury as to self-defense did so because there was insufficient evidence in the record to support the instruction and not because there was an inherent or definitional contradiction in the defenses. (*Robinson*, 163 Ill. App. 3d at 762 ("such cases disclose *** no self-defense was actually shown on the facts, thus justifying no instruction thereon that could contradict an

accident theory in the first place"); see also *People v. Joyner* (1972), 50 Ill. 2d 302, 308; *People v. Tanthorey* (1949), 404 Ill. 520, 530-32; *People v. Jersky* (1941), 377 Ill. 261, 267.) Those cases that allowed the jury to be charged with self-defense instructions had demonstrated in the record evidence to support both defenses. See, *e.g., People v. Stewart* (1986), 143 Ill. App. 3d 933; *People v. Brooks* (1985), 130 Ill. App. 3d 747; *People v. Buchanan* (1980), 91 Ill. App. 3d 13.

Authority for the *Robinson* decision dates back 20 years to this court's decision in *People v. Joyner*. In that case, the murder convictions of two defendants were reversed and the causes remanded because of the failure of the trial court to give the jury instructions as to voluntary manslaughter. (*Joyner*, 50 Ill. 2d at 306.) Even though the testimonies of both of the defendants indicated that the homicides were unintentional, this court found no error in allowing instructions on both self-defense, requiring evidence of intent, as well as voluntary manslaughter, relying on evidence of accident, to be given to the jury. (*Joyner*, 50 Ill. 2d at 309-10.) These instructions were allowed despite this court's observation that the defense was "somewhat at variance with their testimony." *Joyner*, 50 Ill. 2d at 309-10.

In *People v. Jersky*, this court recognized that a self-defense instruction may be given to the jury in a murder case where the evidence shows that the homicide was an accident. The defendant had been convicted of murder but argued on appeal, *inter alia*, that the trial court erred both in giving and in refusing to give certain instructions to the jury. (*Jersky*, 377 Ill. at 267.) The defendant had, in the opinion of this court, presented a defense that was "multifarious and confusing" in an effort to confuse the jury. (*Jersky*, 377 Ill. at 267.) Nevertheless, "[the defendant] had a right *** to present as many defenses as he had *or thought he had*, and this is

true if he offered conflicting defenses for the express purpose of confusing the jury." (Emphasis added.) (*Jersky*, 377 Ill. at 267.) Without approving of the defendant's methods or motives, this court found no error in submitting instructions on inconsistent defenses to the jury. *Jersky*, 377 Ill. at 268.

It has long been the position of this court that a defendant is entitled to instructions on those defenses which the evidence supports. This is so even in instances where the evidence is "slight" (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540; *People v. Kalpak* (1957), 10 Ill. 2d 411, 425; *People v. Khamis* (1951), 411 Ill. 46, 53) or where it is inconsistent with defendant's own testimony (*People v. Izzo* (1958), 14 Ill. 2d 203, 211; *People v. Papas* (1942), 381 Ill. 90, 96; *People v. Scalisi* (1926), 324 Ill. 131, 145). The Supreme Court recently observed that, "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (*Mathews v. United States* (1988), 485 U.S. 58, 64, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887.) The Court in *Mathews* specifically noted that "state cases support the proposition that a homicide defendant may be entitled to an instruction on both accident and self-defense, two inconsistent affirmative defenses. [Citation.]" (*Mathews*, 485 U.S. at 64, 99 L. Ed. 2d at 61, 108 S. Ct. at 887; *cf. United States ex rel. Bacon v. DeRobertis* (N.D. Ill. 1982), 551 F. Supp. 269, *aff'd* (7th Cir. 1984), 728 F.2d 874, 875 (wherein the United States Court of Appeals for the Seventh Circuit stated that "a trial judge should give a requested jury instruction only if *credible* evidence in the record would support a verdict based on that instruction" (emphasis added)).) We, therefore, hold that a homicide defendant is entitled to an instruction on self-defense where there is some evidence in the record which, if believed by a jury, would support the

defense, even where the defendant testifies he accidentally killed the victim.

Given our decision, we turn to the case at bar to determine whether appellee was entitled to an instruction on self-defense. An instruction for self-defense is given in a homicide case where there is some evidence in the record which, if believed by a jury, would support a claim of self-defense. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1; *People v. Lockett* (1980), 82 Ill. 2d 546.) Self-defense is an affirmative defense, meaning that unless the State's evidence raises the issue involving the alleged defense, the defendant bears the burden of presenting evidence sufficient to raise the issue. (Ill. Rev. Stat. 1985, ch. 38, par. 3—2; Ill. Rev. Stat. 1985, ch. 38, par. 7—14.) It is a matter of law whether the defendant has met the evidentiary minimum entitling him to instructions on an affirmative defense. (See Ill. Rev. Stat. 1985, ch. 38, par. 3—2; *Lockett*, 82 Ill. 2d at 553.) This court has held that "very slight evidence upon a given theory of a case will justify the giving of an instruction," but we must be wary so as not to permit a defendant to demand unlimited instructions based upon the merest factual reference or witness' comment. (*Bratcher*, 63 Ill. 2d at 541.) Where self-defense is not supported by the evidence, an instruction thereon may properly be refused. See, *e.g., Bratcher*, 63 Ill. 2d at 540-41.

A self-defense instruction is given in a homicide case when there is some evidence in the record which, if believed by the jury, would support a claim of self-defense. (*Lockett*, 82 Ill. 2d at 551.) IPI Criminal 2d No. 24—25.06, "Use of Force in Defense of a Person," provides in pertinent part:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend (himself) (another) against the imminent use of unlawful force."

To assist in our determination as to whether appellee was justified in using force against the victim, we refer to the committee comments accompanying the statutory codification of self-defense. (Ill. Ann. Stat., ch. 38, par. 7—1, Committee Comments, at 351-52 (Smith-Hurd 1989).) According to the comments, the general rule as to self-defense contains several propositions: (1) the defendant was not the aggressor; (2) the danger of harm was a present one; (3) the force threatened must have been unlawful—either criminal or tortious; (4) the defendant must actually have believed that the danger existed, that his use of force was necessary to avert the danger, and that the kind and amount of force which he used was necessary; and (5) the defendant's belief, in each of the aspects described, was reasonable even if it was mistaken.

The evidence we may consider in determining whether a defendant has successfully raised the issue of self-defense by demonstrating the propositions contained in the committee comments is relatively broad. The defendant's testimony (*Tanthorey*, 404 Ill. at 530), his intent or motive (*Tanthorey*, 404 Ill. at 530; *Bratcher*, 63 Ill. 2d at 540), whether there was any sort of physical contact between the defendant and the victim (*Bratcher*, 63 Ill. 2d at 540), the type of wound suffered by the victim (*People v. Woods* (1980), 81 Ill. 2d 537, 543) and the circumstances surrounding the incident are a few of the factors all properly within the trial court's consideration.

With these factors in mind, we turn to the record and the judgment of the trial court. It is the judgment of the trial court that is on appeal; this court may sustain the trial court's judgment upon any ground warranted, regardless of whether the trial court relied on it. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) Further, this court is not required to accept

the trial court's reason or reasons for its decision in affirming the trial court's holding and may in fact conclude that the trial court's reasoning is incorrect. *Material Service*, 98 Ill. 2d at 387.

We agree with the trial court's finding that appellee was not the aggressor in the situation that resulted in the victim's death. Both appellee and Mr. Jeffries testified that the victim and his companions instigated the verbal exchange between appellee and the victim in regard to their June 1985 altercation. Although evidence was presented that appellee responded to the victim's comments ("Q. What did [appellee] say to [the victim] at that time? A. *** [I]f he wanted to get him he could have got him"), we conclude that appellee did not seek to create a confrontation with the victim nor did he seek to escalate their exchange into the unfortunate turn of events that developed.

The trial court also correctly examined the record for evidence of any physical contact between appellee and the victim prior to the use of force. Evidence of this sort helps to reveal the basis for appellee's belief that the perceived danger actually existed and that the kind and amount of force he used to defend himself was in fact necessary. Appellee testified that after he had retrieved his mail, the victim and his companions attempted to search appellee's trouser pockets. Although there was testimony from another witness, a resident of the housing project, that she saw the victim search appellee's pockets, appellee testified that the men did not in fact search his pockets.

Appellee's testimony that the victim never touched him or even physically threatened him on the night he was shot and killed leaves this court to wonder how appellee could have believed that any force, let alone *deadly* force, was necessary to prevent harm to himself. The physical contact between the victim and appellee, if

any, was minimal and certainly did not call for the use of force in response. Moreover, even if we assume that the victim searched appellee's pants' pockets, appellee returned to his apartment immediately after the incident. The fear the contact may have caused appellee would have been mitigated, if not entirely eliminated, by his retreat. The period of time appellee spent alone locked in his apartment would certainly have dispelled any belief appellee had that a present danger existed when the victim is alleged to have searched his pockets.

Appellee testified that he knew that the victim was unarmed when he returned downstairs with a loaded gun hidden in the waistband of his pants. He also testified that the victim's hand was in a "striking position" when appellee saw him standing near his mailbox just before the shooting and he saw what he thought was a beer can in the victim's hand.

We fail to see how the victim's hand, held at waist level and angled behind his back, could have been perceived as a threat to appellee and we are equally hesitant to characterize the victim's stance as a "striking position." Although appellee saw what he thought was a beer can in the victim's hand, a beer can, unlike a broken beer bottle or any other dangerous instrument, can hardly be thought of as a deadly weapon.

The victim did not advance toward appellee nor did he threaten appellee with words that would have led appellee to believe that he was going to strike or attack appellee; the victim was, in fact, running from appellee when he was shot in the back. Perhaps this fact alone speaks more forcefully than any testimony ever could that the victim was fleeing from rather than pursuing appellee when he was shot and killed.

Appellee testified that the victim did not threaten him with any sort of force, criminal or tortious. Moreover, appellee did not testify that it was the position of

the victim's hand which frightened him, but a combination of verbal threats by the victim's *companion*, a question from the victim to appellee ("What are you doing back down here?") and the June 1985 incident which incited appellee's fear.

Threats alone will not justify the use of deadly force in a killing (Ill. Rev. Stat. 1985, ch. 38, par. 7—1), especially where the threats are made by someone other than the victim. As to the June 1985 altercation, appellee testified that because the victim had struck him on the side of the head with a wine bottle during that incident, he feared that the victim was going to strike him with the beer can. Appellee unfortunately relied on this past encounter to anticipate a reaction from the victim which never occurred. Hindsight is not, however, always an accurate indicator of the future and we simply cannot conclude that appellee's knowledge of the victim's past behavior justified his conduct on the night of the victim's murder.

The trial court properly considered evidence of appellee's motive in its determination. Appellee testified repeatedly that he did not intend to shoot the victim.

"Q. And was it your intention to shoot him at that time?

A. No, it wasn't.

* * *

Q. Did you go downstairs intending to shoot [the victim]?

A. No, I did not.

* * *

Q. When you pulled your pistol, did you intend to shoot him?

A. No, I did not.

Q. What did you intend to do at that time?

A. I pulled it just to scare him.

Q. And why did you shoot him?

A. Because of my right shoulder hitting the mailbox." 187 Ill. App. 3d at 1077-78 (McNamara, J., dissenting).

Appellee's testimony, rather than indicating appellee *intended* to shoot the victim because he believed that he was in imminent danger of death or great bodily harm, reveals a clearly opposite motivation for his action. (See *Bratcher*, 63 Ill. 2d at 540.) Not once, but repeatedly, appellee testified that the shooting was an accident, adding at one point that he pulled the gun out of the waistband of his pants and pointed it at the victim "just to scare him."

We are unpersuaded by appellee's argument that he was justified in using deadly force to protect himself from the victim, an unarmed man, shot in the back, who neither threatened appellee with verbal or physical force nor in fact attacked appellee. Self-defense is a right an individual is entitled to exercise in those situations where he reasonably believes that force is necessary to prevent death or great bodily harm to himself. (Ill. Ann. Stat., ch. 38, par. 7—1, Committee Comments, at 352-53 (Smith-Hurd 1989) (the defendant, acting as a reasonable man, believes that the other person is going to use force on the defendant imminently, that the use of force to defend himself is necessary, and that the quantity of force the defendant uses is proper to defend himself).) The right of self-defense does not justify an act of retaliation or of revenge; it is a right intended to protect an individual and not an individual's pride. *(People v. Woods* (1980), 81 Ill. 2d 537, 543.) Nothing appellee has presented indicates to this court that appellee was justified in using force to defend himself against the victim. We conclude, as did the dissent in the appellate court's opinion, that:

"[appellee] could not have feared for his life, even unreasonably. A jury could not have viewed this as a situation

requiring the use of deadly force for protection. No matter how we view the facts, turning them inside out and searching for any possible inference of self-defense, the testimony never changes. The victim offered no threat to [appellee], who briefly left the scene to acquire, and returned to display, a loaded, cocked, deadly weapon." 187 Ill. App. 3d at 1080 (McNamara, J., dissenting).

For the reasons above, we find that the trial court's refusal to tender to the jury instructions on the law of self-defense was correct. Accordingly, we reverse the appellate court's decision. We remand the cause to the appellate court for resolution of defendant's two remaining grounds of appeal which the appellate court did not reach.

*Appellate court reversed;*
*cause remanded.*