FIRST DIVISION

August 7, 2000

No. 1-98-2531

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ROMIE DUNLAP,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

DENNIS J. PORTER

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant, Romie Dunlap, was charged with two counts of armed violence and three counts of aggravated battery.  Following a jury trial, defendant was convicted of armed violence.  After a hearing in aggravation and mitigation, defendant was sentenced to 25 years in the Illinois Department of Corrections.  He now appeals his conviction and sentence.  For the reasons that follow, we affirm defendant's conviction and sentence.

The following facts were adduced at trial.  On September 5, 1996, at approximately 10 p.m., Serena Williams (the victim) was at home painting.  She decided to leave her apartment, which was in a Chicago Housing Authority building, to go to the store before it closed.  Outside her apartment was a common hallway with a stairwell at each end and an elevator in the middle.  As she headed toward the elevator, the victim saw defendant banging on the window of the apartment two doors down where her neighbor, Tonya Battie, who was also defendant's girlfriend, lived with her six children.  As defendant banged on the door and window of Ms. Battie's apartment, he threatened to come in and kill her and her six children if she did not let him in.  Because Tonya and her sister, Doritha Hampton, who were inside the apartment, were scared by defendant and his threats, the two women retrieved weapons -  a baseball bat and a 4 x 4 stick - from Tonya's pantry.  The door upon which defendant was pounding was the only exit out of the apartment and there was no telephone in the apartment on which to call the police. 

As the victim was walking to the elevator, she asked defendant why he was doing what he was doing and told defendant that she was going to call the police if he did not stop.  In response, defendant told the victim in an angry tone of voice to "shut the fuck up," to "mind her damned business," and that she "ain't [sic] got shit to do with it."  The victim then headed toward the elevator to call the police.  At that point, defendant came up behind the victim and slapped her in the face with the palm of his hand.  The force of defendant's slap was so very strong that she fell to the ground and Doritha, still inside the apartment, heard the slap.

As the victim was getting up, Tonya and Doritha came out of the apartment.  Defendant apologized to Tonya for what he had done to the victim.  After the victim got up, she started walking toward her apartment.  As she tried to go into her apartment, she could not because defendant was coming toward her.  Tonya and Doritha started chasing defendant, who was running in the victim's direction, down the hallway, toward the direction that the victim was going into her apartment.  Because defendant was getting too close to the victim, Tonya threw the baseball bat at defendant.  The baseball bat landed on the ground and rolled toward defendant's foot.  At that point, Tonya and Doritha were 8 to10 feet away from defendant;  Tonya was now unarmed, and Doritha had the stick.  The two women then stood there and watched as defendant picked up the bat and resumed running toward the victim.

When the victim saw that defendant had a bat in his hand coming toward her, she started running down to the other end of the hallway toward the stairs.  She slipped and fell at the end of the hall, landing in the corner in front of the stairwell.  As she fell to the floor, she balled up, put her left leg up and her hands over her head.  At that point, while the victim was cowering unarmed on the ground, and the other two women were standing approximately 10 feet away, defendant began striking the victim with the baseball bat.

The victim was blocking her face, trying to prevent the defendant from hitting her in the face.  Defendant continued to repeatedly hit the victim with the bat with a very strong force, hitting her arm and her leg.  As he repeatedly struck her with the bat, she was balled up, screaming for help and crying.  During this attack, defendant struck the victim's body approximately 15 to 20 times.  Defendant had both hands together holding the bat over his head and was striking the victim with an up and down motion from his head downward.  At that point, Tonya and Doritha were trying to get help and the victim heard them screaming for someone to please call the police because defendant was beating her with a bat.  During this whole time, the victim had nothing in her hand.

Defendant stopped beating the victim for a brief moment.  At that point, Tonya and Doritha started walking toward the defendant.  Defendant, with the bat still in his hand, ran away from them toward the stairwell.

Then, defendant reappeared in the hallway, with the bat still in his hand.  At that point, there was nothing blocking defendant's way of going down the stairwell and the victim had not moved since defendant had stopped beating her.  Nonetheless, defendant began beating the victim a second time.  During this second round of beating, defendant struck the victim with the bat approximately 5 to 10 more times, during which time the victim was balled up in the corner with both her hands protecting her head.  Defendant stopped when the victim's cousin came out of her apartment and walked toward them.  Defendant then ran down the stairwell taking the bat with him.

After defendant left the scene, Tonya and Doritha helped the victim to her apartment, laid her on a couch and called the police.  When the victim awoke, the police had arrived.  The victim had redness and bruises on her arm, several bruises on her leg and her bone was sticking out of her arm.  The ambulance arrived and took the victim to Mercy Hospital.  At the hospital, the victim was X-rayed and ultimately had surgery on her left arm, which had been broken in several places.  She stayed in the hospital for approximately three days, and she had a cast on her arm for approximately six months.  During the trial, the witness displayed to the jury the scar that remains on her arm as a result of the beating.

After the victim was taken to the hospital, Tonya and her children spent the night at Doritha's home.  The next morning, defendant came to the front door of Doritha's apartment.  She called the police and defendant was arrested.

Defendant now raises four issues in this appeal, two are related to his conviction and two are related to his sentence.  Defendant, first pleonastically, but unpersuasively, contends that he suffered from prejudicial error and was denied a fair trial as a result of  the trial court's ruling which allowed the State to introduce evidence of Tonya's pregnancy.  All of defendant's arguments on the issue are based upon his erroneous presupposition that the evidence of Tonya's pregnancy was irrelevant.  As we shall explain, and as the trial court correctly determined, the evidence was relevant to defendant's claim of self-defense.

Under Illinois law, evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. 
People v. Gonzalez
, 142 Ill. 2d 481, 568 N.E.2d 864 (1991).  Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence.  
People v. Eyler
, 133 Ill. 2d 173, 549 N.E.2d 268 (1989).  Trial courts are given broad discretion in ruling on issues of relevancy and materiality, and, absent an abuse of discretion, the trial court's decision will not be overturned.  
People v. Williams
, 196 Ill. App. 3d 851, 554 N.E.2d 1040 (1990).

The trial court here did not abuse its discretion in determining that the evidence of pregnancy was relevant and material to rebut defendant's claim of self-defense.  Defendant contends, however, that since his "self-defense instruction was refused *** no theory -- let alone evidence -- was ever presented to the jury."  As we shall discuss later, the reason that jury instructions on self-defense were not given was because there was no evidence of self-defense.  Nonetheless, contrary to defendant's assertions, the theory of self-defense was presented to the jury.

In defendant's opening statement, defendant's trial attorney stated as follows:

"Three women charge after [defendant] with a baseball bat, and a stick or pipe, and the third one is still running after him. [Defendant] hears clanging on the concrete, the baseball bat is thrown at him and it clangs *** as it hits the concrete. [Defendant] turns around, picks up the bat and goes like this, get away from me, I'm out of here, leave me alone.  And they're still coming at him, they're charging him and he's swinging this bat like this, get away from me."

Thus, defendant placed the claim of self-defense before the jury and opened the door for the State's rebuttal evidence of the physical condition and the very late pregnant state of one of these "charging" women.  Therefore, it is irrelevant to this issue that there was subsequently no evidence presented nor jury instructions given on self-defense.

In a case analogous to the instant one, the Illinois Supreme Court, discussing character evidence, explained that the rule that the prosecution may put on reputation evidence to prove the victim's peaceful character only if defendant has 
first
 attacked the victim's character for peacefulness must apply to statements made in defendant's opening statement. 
People v. Whiters
, 146 Ill. 2d 437, 442-43, 588 N.E.2d 1172, 1174-75 (1992).  As the court observed:

" To hold otherwise would enable the defendant to get away with using her opening statement to vilify the victim's character and thus poison the water without offering any supporting evidence.  An evidentiary response from the State is appropriate under the circumstances.  To hold otherwise would invite repetition of an improper practice and would defeat the truth-seeking function of a trial."
 Whiters
, 146 Ill. 2d at 443, 588 N.E.2d at 1174-75.

The same principle holds true here and disposes of defendant's claim that the trial court committed prejudicial error in admitting the fact of Tonya's pregnancy into evidence.  The evidence of Tonya's physical condition was properly admitted to refute defendant's claim of self-

defense.

Defendant states categorically that "the primary purpose and effect" of the State's "targeted disclosure" of Tonya's pregnancy was to "spark sympathy" for Tonya and Doritha and "outrage against the defendant for jeopardizing the health and safety of a pregnant woman and an unborn baby."  He asserts that the evidence resulted in emotional considerations that diverted the jurors' focus from the issue of whether the State proved that the victim suffered great physical harm.  Defendant's indefatigable claims to the contrary, there is no indication whatsoever in the record that the State improperly used the evidence of Tonya's pregnancy.  It was clear from the evidence that it was the victim, not Tonya, who was harmed.  Moreover, the evidence of bodily harm to the victim was overwhelming.  In addition, the State did not elicit any testimony with regard to Tonya or her unborn baby being in jeopardy.  Thus, any concerns regarding possible things that could have happened to Tonya and her unborn baby were absent and it cannot be said that such concerns diverted the jurors from their consideration of the issue in this case.  Moreover, "[a] party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury."
 People v. Jenko
, 410 Ill. 478, 482, 102 N.E.2d 783, 785 (1951).  Thus, even if the testimony regarding Tonya's pregnancy 
might
 have sparked indignation or horror in the jury, the trial judge properly allowed the pregnancy testimony to refute defendant's claim of self-defense.

Defendant, citing a portion of the State's rebuttal closing argument, incorrectly asserts that "[p]regnancy was argued by the prosecutor to the jury but not in the context of self-defense."  We first point out that defense counsel failed to timely object to the passing reference to Tonya's pregnant condition in the State's rebuttal argument, but more importantly, defendant is incorrect.

In closing argument, defense counsel argued that defendant was not threatening anyone, and further argued that the actions of Tonya were responsible for the incident, for the case and were the reason the jury was in court that day, and further argued that defendant tried to walk away and leave the scene, but the three women were "out there to use a little bit of self-help. 3 on 1."  In response to defense counsel's argument, the State argued in rebuttal: 

"This guy is threatened by 7 month pregnant Tonya?  This guy is threatened from unarmed Serina? This guy is threatened from Doritha who never gets closer than 10, 15 feet from defendant?  This guy was never threatened.  This guy is a thug, plain and simple."

Under these circumstances, the remark about Tonya's pregnancy was fair comment evoked by defense counsel's closing argument and was, therefore, proper. See, 
e.g.
, 
People v. Leonard
, 171 Ill. App. 3d 380, 388, 526 N.E.2d 397, 402 (1988)(Where there was no evidence to support defense counsel's argument that defendant did not drive around a while as the victim testified, the prosecutor's comments during rebuttal that the victim was the only one to testify as to the duration of the drive was fair comment evoked by defense counsel's closing argument and was, therefore, proper).

In any event, the State's reference to the pregnancy in rebuttal closing argument was harmless.  Not every mention of a victim's personal traits, such as the fact a victim was pregnant, will automatically vest in a defendant the right to a new trial. 
People v. Lewis
, 165 Ill. 2d 305, 330, 651 N.E.2d 72, 84 (1995).  Here, it certainly did not deny defendant a fair trial.  The cases cited by defendant are wholly inapposite in that they involve factual situations and issues that are different from the facts and issues present here.  They involved irrelevant evidence of either the pregnancy of a murdered victim or the pregnancy of the wife of a murdered victim.  Contrary to the cases cited by defendant, it was not the 
victim's
 pregnancy that was commented upon but, rather, it was the pregnancy of a third party - a third party that defendant argued was an aggressor.

Defendant next contends that the trial court's refusal to instruct the jury on the defense of justifiable use of force was reversible error.  Before we address defendant's argument, we note that the parties here dispute the standard of review.

Generally speaking, the instruction of the jury is a matter resting within the sound discretion of the trial court. 
People v. Castillo,
 188 Ill. 2d 536, 540, 723 N.E.2d 274, 276 (1999).  Nevertheless, whether or not defendant has introduced sufficient evidence to meet the evidentiary minimum required to support an instruction is a question of law.
 People v. Everette
, 141 Ill. 2d 147, 157, 565 N.E.2d 1295, 1299 (1990); 
People v. Luckett
, 309 Ill. App. 3d 14, 19, 722 N.E.2d 634, 637 (1999); 
People v. Miller,
 259 Ill. App. 3d 257, 264, 630 N.E.2d 1125, 1130
 (1994);
 People v. Rutkowski
, 141 Ill. App. 3d 713, 716, 490 N.E.2d 1034, 1036 (1986).

It is undisputed that a defendant in a criminal case is entitled to have the jury instructed on any legally recognized defense theory which is supported by some evidence, including slight evidence. See, 
e.g.
,  
People v. Miller
, 259 Ill. App. 3d 257, 264, 630 N.E.2d 1125, 1130 (1994);  
People v. Jackson
, 304 Ill. App. 3d 883, 889, 711 N.E.2d 360, 365 (1999).  The trial court, however, may properly refuse a defendant's proffered instruction on a theory of self-defense, when there is no evidence to support the theory. 
People v. Bratcher
, 63 Ill. 2d 534, 540-41, 349 N.E.2d 31 (1976).  In the present case, the trial judge specifically stated that his refusal to give the requested instruction was based upon his conclusion that there was no evidence to support defendant's theory of self-defense.  Therefore, we need only consider the threshold question of whether the record contains sufficient evidence to raise the issue of self-defense which would have justified giving the requested instruction.  If we conclude that the evidence was not adequate, as a matter of law, as did the trial judge, 
a fortiori
 we would conclude that there was no abuse of discretion.  On the other hand, should we determine that the evidence was sufficient to raise the issue of self-defense, we would necessarily conclude that the trial judge abused his discretion.

A defendant, in order to raise a claim of self-defense, must present evidence supporting each of the following elements:  (1) force was threatened against the defendant;  (2) the defendant was not the aggressor;  (3) the danger of harm was imminent;  (4) the force threatened was unlawful;  (5) the defendant actually believed that a danger existed and that the kind and amount of force he used was actually necessary to avert the danger; and (6) defendant's beliefs were reasonable. 
People v. Morgan
, 187 Ill. 2d 500, 533, 719 N.E.2d 681, 700 (1999); 
People v. Babbington
, 286 Ill. App. 3d 724, 730-31, 676 N.E.2d 1326, 1331 (1997).  With respect to the necessary elements of this affirmative defense, defendant incorrectly asserts, without supporting authority, that they are guidelines and not fixed prerequisites and that evidence of 
some
 of the elements is enough to entitle him to an instruction on self-defense and place the issue before the jury.  The law is clear, however, that self-defense is an affirmative defense, and unless the State's evidence raises the issue, the defendant must present some evidence as to 
each
 of the elements of the defense sufficient to raise the issue.
 
People v. Morgan
, 187 Ill. 2d at 533, 719 N.E.2d at 700;
 People v. Everette
, 141 Ill. 2d  147, 157, 565 N.E.2d 1295, 1299 (1990); 
People v. Shields
, 298 Ill. App. 3d 943, 700 N.E.2d 168 (1998); 
 People v. Falconer
, 282 Ill. App. 3d 785, 791, 668 N.E.2d 1095, 1099 (1996); 
People v. Goosens
, 262 Ill. App. 3d 722, 727, 640 N.E.2d 284, 288 (1994).

Although our plenary review confirms that the record contains no evidence as to any, let alone each, of the necessary elements of a claim of self-defense, we note in particular that there was no evidence of the required element that the defendant was not the aggressor.  Rather, the evidence unequivocally established that defendant was the aggressor here.

Defendant initiated his aggressor role when he began beating on the window and threatening Tonya.  Even the mere utterance of words may be enough to qualify one as an initial aggressor.
 
People v. De Oca
, 238 Ill. App. 3d 362, 367, 606 N.E.2d 332, 336 (1992); 
People v. Barnard
, 208 Ill. App. 3d 342, 350, 567 N.E.2d 60, 66 (1991).  When the victim told defendant to stop and that she was going to call the police, however, defendant escalated his aggressor role by slapping her.  Defendant was clearly the initial aggressor.

Nonetheless, defendant contends that "the aggressor role is not dispositive" here because he was alternatively seeking the "'initial aggressor's use of force'  I.P.I. instruction."  Defendant specifically requested the second paragraph of the Illinois Pattern Jury Instructions, Criminal, No. 24-25.09 (2d ed. 1981)(IPI Criminal 2d No. 24-25.09), which provides as follows:

"A person who initially provokes the use of force against himself is justified in the use of force only if

***

he in good faith withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force."

This instruction is consistent with that section of the Criminal Code of 1961 (720 ILCS 5/7-- 4(c)(2) (West 1992)) which provides an exception, under the circumstances described by this instruction, to the general rule that the justifiable use of force, or self-defense, is not available to an individual who initially provokes the use of force against himself.  The trial court refused to give this instruction, citing the lack of evidence of withdrawal.  We agree.

There is no evidence here that defendant's actions "indicate[d] clearly to the other person that he desire[d] to withdraw and terminate the use of force" (IPI Criminal 2d No. 24-25.09).  There is no evidence that defendant was retreating in any way when he started chasing the unarmed victim.  The record also contains absolutely no evidence that the victim here was an aggressor.  To the contrary, defendant never ceased the escalation of his role as the initial aggressor when he started chasing the victim and then proceeded to strike the victim repeatedly after she had fallen and was sprawled, cowering on the floor, attempting to protect herself from defendant.

In order for a defendant to be entitled to an instruction on an affirmative defense, "[t]here must be enough evidence so that, if believed, it would be 'sufficient for a reasonable jury to find in his favor.' [Citation.]."
 
People v. Jordan
, 247 Ill. App. 3d 75, 92, 616 N.E.2d 1265, 1278 (1993).  The supreme court has explained that although the amount of credible evidence required to justify the giving of a self-defense instruction need only be slight, the court has further cautioned that the evidence must be more than that which would permit a defendant to demand instructions based upon the merest factual reference or witness's comments. 
People v. Everette
, 141 Ill. 2d 147, 157, 565 N.E.2d 1295, 1299 (1990), citing 
People v. Bratcher
, 63 Ill. 2d 534, 540-41, 349 N.E.2d 31 (1976).
  Defendant here attempts to do just that by focusing on evidence that came in the form of a stipulation that the police detective who interviewed Doritha would testify that "she indicated that she had swung a stick while [Tonya] Battie threw the bat at [defendant] in defense of [the victim]."  Doritha, however, unequivocally denied swinging the stick or telling the officer that she swung the stick.  Defendant now demands self-defense instructions based upon this mere factual reference to swinging a stick and recreates a version of the crime, unsupported by 
any
 evidence, in which the two women whom he was terrorizing, Doritha and seven months pregnant Tonya, are recast as the aggressors who were "charging" after defendant and from whom defendant was trying to escape, although the unrebutted testimony was that he was instead chasing the victim.  As the testimony stands unrebutted, there is 
no
 evidence in the record to support defendant's theory of self-defense.

Defendant argues that, had the requested instructions been given, a jury could have found that defendant was frantically using force against the victim who was blocking his escape to safety from Tonya and Doritha.  To support his argument that he had a right to use force against  the victim here, an innocent third party, defendant attempts to recharacterize the undisputed evidence on this point.  He claims that the evidence presented of imminent danger from Doritha and Tonya wielding a baseball bat and a "4 by 4" stick was sufficient to support his defense of justifiable use of force against the victim.  Defendant's argument is specious.

The sisters here were nonaggressors who were merely trying to protect themselves, and then were trying to protect the victim, all of which they had a right to do.  There was not a shred of evidence that the victim's fallen body was impeding defendant's attempt to leave the scene.  Moreover, after defendant repeatedly beat the victim the first time, he started to leave and then reappeared in the hallway, with the bat still in his hand.  At that point, as the undisputed evidence clearly established, the victim had not moved since defendant had stopped beating her and there was nothing blocking defendant's way of going down the stairwell.  Nonetheless, defendant resumed beating the victim a second time. There was also unrebutted testimony that the reason that Tonya threw the bat at defendant was an attempt to stop him, albeit ineffectually, from going after the victim.  It is undisputed that defendant retrieved the bat and continued to go after the victim, who had fallen in front of the stairwell and was trying to protect herself.  The evidence was uncontroverted that when defendant hit the victim she had no weapon and was lying on the floor trying to protect herself.  Moreover, although defendant now had a bat, Tonya now had no weapon.  Although Doritha still had the stick, the two women were just standing, watching defendant beat the victim, and trying to get help.

It is from these undisputed facts that defendant has attempted here, vainly we might add, to concoct an incredible scenario in which he was attempting to retreat and was frantically using force against the victim because she was blocking his escape to safety from unarmed, pregnant Tonya and Doritha, who had a stick, whom he asserts were "charging" after him.  He boldly asserts that a reasonable jury could have found plausible that his actions constituted a justifiable use of force.  To the contrary, based on the undisputed facts, no reasonable jury could have found that defendant acted in self-defense.  Defendant was not entitled to the instruction regarding an initial aggressor's use of force because the record is totally devoid of any evidence of retreat on the part of defendant.  Thus, the trial court did not abuse its discretion in refusing to give the jury the defendant's requested self-defense instruction.  Defendant's conviction is affirmed.

We shall next address issues related to defendant's sentence.  Defendant contends that the trial court's reliance on the "Class X Offender" sentencing scheme, resulting in a 25-year sentence, was impermissible double enhancement, where the latest offense was not the requisite class of felony.

Sentencing issues must be raised by objection in the trial court and in a postsentencing motion in order to preserve those issues for appellate review.
 People v. Reed
, 177 Ill. 2d 389, 393-94, 686 N.E.2d 584 (1997).  We agree with the State that defendant has waived this issue.   Nonetheless, waiver is a limitation on the parties, not on the court, and the goal of maintaining a sound body of precedent may override considerations of waiver. 
People v. Williams
, 188 Ill. 2d 293, 301, 721 N.E.2d 524, 528 (1999).  In view of theses principles, we shall address the merits of defendant's argument.

The Class X sentencing statute provides, in pertinent part:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender.  This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977;  and (2) the second felony was committed after conviction on the first;  and (3) the third felony was committed after conviction on the second. 730 ILCS 5/5-5-3(c)(8) (West 1996).

At the sentencing hearing, the State requested a Class X sentence and cited defendant's prior convictions, one of which was a Class 1 conviction, the other a Class 2.  Defendant is not challenging the general validity of this sentencing statute, but argues that it should not have been applied in the present case.

Defendant is not challenging the fact that he was 21 at the time of the instant Class 2 felony conviction for armed violence.  He is also not challenging the fact that he was previously convicted of the two "Class 2 felonies or greater Class felonies" that are required to satisfy the Class X Sentencing statute.  Instead, defendant is challenging the present Class 2 felony conviction for armed violence.  Defendant contends that the conviction here for armed violence was enhanced to a Class 2 conviction only because of the Category III weapon and that, absent enhancement, the latest offense was the underlying aggravated battery, a Class 3 crime.  He asserts that this Class 3 crime was "enhanced" to armed violence only because of the Category III weapon or bludgeon that was neither separately brought and tried nor arising from a different series of acts. See 730 ILCS 5/5-5-3(c)(8)(West 1996).  Therefore, contends defendant, citing 
People v. Hobbs
, 86 Ill. 2d 242, 427 N.E.2d 558 (1981), the Class X offender status here for a Class 2 felony that had already been increased from Class 3 to Class 2 is impermissible double enhancement.

We first note that defendant misconstrues the meaning and context of the phrase "separately brought and tried and arise out of different series of acts" as it appears in the Class X sentencing statute. 730 ILCS 5/5-5-3(c)(8)(West 1996).  Defendant was convicted of burglary in 1985 (Class 2 felony), and defendant was convicted of aggravated possession of a stolen motor vehicle in 1993 (Class 1 felony).  These two felonies satisfy the portion of the statute that requires defendant to have "twice been convicted."  It is from 
these two convictions
 that the present charges were required to be "separately brought and tried and arise out of a different series of acts."  That requirement was clearly met here.  Thus, defendant's attempt to apply the language to the counts involved in the 
instant
 case is misplaced.

Regarding defendant's reliance on 
Hobbs
, we note that 
Hobbs
 is a "double enhancement" case in which the defendant committed a retail theft in 1979 that was prosecuted as a felony by reason of defendant's 1978 felony theft conviction. 
Hobbs
, 86 Ill. 2d at 243-46, 427 N.E.2d at 558-60.  The trial judge imposed an extended-term sentence. 
Hobbs
, 86 Ill. 2d at 243, 427 N.E.2d at 558-60.  The appellate court vacated the defendant's sentence because the trial judge had improperly used the same prior conviction (the 1978 felony theft) not only to enhance the classification of the instant offense from a misdemeanor to a felony, but also to increase the defendant's sentence to an extended term. 
Hobbs
, 86 Ill. 2d at 245-46, 427 N.E.2d at 559-60.

Hobbs
 is inapposite to the present case.  Aside from the fact that the 
Hobbs
 case dealt with the extended-term provisions of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b) (West 1998)), 
Hobbs
 stands for the proposition that the conduct for which defendant is being sentenced must constitute a felony 
in and of itself
, without any enhancement, in order to be eligible for an extended term. See 
People v. Godwin, 
212 Ill. App. 3d 435, 440, 570 N.E.2d 1276, 1279 (1991).  Here, in contrast to the situation in 
Hobbs
, defendant's two prior convictions were used solely to sentence defendant under the Class X sentencing statute, and neither conviction was used to "enhance" the classification of the instant offense.  Defendant's conviction here was a Class 2 felony, in and of itself, without enhancement. 

Defendant was charged with three counts of aggravated battery and two counts of armed violence.  Here, because defendant committed aggravated battery while armed with a dangerous weapon, the jury found defendant guilty of one count of armed violence.  The trial judge entered judgment and sentenced defendant for one count of armed violence.  Thus, defendant was only convicted of one count of armed violence.  The type of "enhancement" that defendant argues occurred here is not the type of enhancement denounced by 
Hobbs
 but, rather, is comparable to the situation in 
Godwin,
 where the offense became a felony in and of itself without any consideration given to prior convictions.

In 
Godwin
, the court found that a theft offense became a felony from a misdemeanor by virtue of the value of the property obtained through the deceptive practice. 
Godwin
, 212 Ill. App. 3d at 440, 570 N.E.2d at 1279.  Thus, the Godwin court held that the theft offense "constitutes a felony in and of itself simply by virtue of the dollar value involved and presents a different situation than that involved in 
Hobbs
." 
Godwin
, 212 Ill. App. 3d at 440-41, 570 N.E.2d at 1279-80.  Likewise, in the present case, the Class 3 offense became a Class 2 offense by virtue of the fact that a dangerous weapon was used.  Thus, the offense constitutes a felony in and of itself.

The felony class for armed violence ranges from Class X down to Class 2 felony.  720 ILCS 5/33A-3 (West 1992).  Based upon the type of weapon with which defendant was armed, he was convicted of a Class 2 felony.  Class 2 is the lowest class available for armed violence.  Because defendant was armed with a weapon which was, at the time of his sentencing, a Class III weapon,
(footnote: 1) he was convicted of a Class 2 felony.

Defendant, in his reply brief, has also raised a constitutional challenge to the trial court's sentence based upon the Illinois Supreme Court's opinion in 
People v. Cervantes
, 189 Ill. 2d 80, 723 N.E.2d 265 (1999), which was published during the pendency of this appeal.  If a sentence fails to conform to a statutory requirement, not only is it void, but it may be attacked at any time. 
People v. Arna
, 168 Ill. 2d 107, 113, 658 N.E. 445, 448 (1995).

The Illinois Supreme Court held in 
People v. Cervantes
, 189 Ill. 2d 80, 723 N.E.2d 265 (1999), that the General Assembly violated the single subject clause of the Illinois Constitution (Ill.  Const. 1970, art.  IV, §8(d)) when it passed Public Act 88-680, (Pub. Act 88-680, eff. January 1, 1995), commonly known as the "Safe Neighborhoods Law."  Because Public Act 88-

680 has been held unconstitutional in its entirety, it is void 
ab initio.

Defendant's conviction of a Class 2 felony here for armed violence was based on the commission of a felony with a "Category III" weapon.  "Category III" was a change to the armed violence statute, included in a section (Article 50) of Public Act 88-680.  Nonetheless, the weapons listed under Category III were not new additions, because the identical language existed prior to Public Act 88-680; all of those weapons had previously been included in Category II of the armed violence statute. 720 ILCS 5/33A-1(c) (West 1992).  Since Public Act 88-680 was held unconstitutional, it is void 
ab initio
, and there no longer is a Category III for those dangerous weapons.
 
 Thus, the dangerous weapon used by defendant was a Category II weapon, not a Category III weapon.  This factor does not automatically render defendant's sentence void.

Defendant was not sentenced under Public Act 88-680 but, rather, the Class X sentencing statute (730 ILCS 5/5-5-3(c)(8)(West 1998)), as discussed earlier.  Nonetheless, in support of his argument that his latest offense was not the requisite class of felony, 
i.e.
, Class 1 or Class 2 felony, as required by the Class X sentencing statute, defendant asserts, without additional argument, that the underlying Class 2 felony is void because it was based on a Category III weapon.  We conclude that despite the semantical change from Category III to Category II, defendant's sentence nonetheless conformed to statutory requirements.

When an act is held unconstitutional, the state of the law is as if the act had never been passed. 
In re G.O.
, 191 Ill. 2d 37 (2000);
 People v. Young
, 312 Ill. App. 3d 428 (2000).  Prior to the enactment of Public Act 88-680, there existed no "Category III weapon" in the armed violence statute.  Instead, the identical weapons described in "Category III" were listed in "Category II." 720 ILCS 5/33A-1(c) (West 1992).  These include a "bludgeon," which is the weapon used by defendant here, namely, the baseball bat.  Therefore, under the prior law, defendant was armed with a Category II weapon.  Even prior to the enactment of Public Act 88-680, armed violence with a Category II weapon, such as the bludgeon here, was a Class 2 felony. 720 ILCS 5/33A-3(b) (West 1992).  Thus, although recategorizing the weapons listed in Category II to Category III, Public Act 88-680 made no substantive change in the armed violence statute with respect to the class of felony with which defendant was convicted.  Under both Public Act 88-680 and the prior law, a bludgeon, the type of weapon used by defendant, whether listed under Category III of the unconstitutional public act, or listed under Category II of the relevant applicable law, resulted in a Class 2 felony.  As we have previously explained, defendant was convicted of a Class 2 felony for armed violence, which was the lowest class available, under both Public Act 88-680, as well as the prior law.  Thus, defendant's conviction for a Class 2 felony here was the requisite class of felony required to satisfy the Class X sentencing statute.

Because defendant was sentenced as a Class X offender, the applicable sentencing range is not less than 6 years and not more than 30 years. 730 ILCS 5/5-8-1(a)(3) (West 1996).  Defendant was sentenced to 25 years of imprisonment.  The imposition of a sentence is a matter within the trial court's discretion.  
People v. Jones
, 168 Ill. 2d 367, 659 N.E.2d 1306 (1995).  Absent an abuse of that discretion, this court will not vacate or reduce a sentence if it falls within the statutory limit. 
Jones
, 168 Ill. 2d at 373, 659 N.E.2d at 1308.  The reason for this is because the weight that the trial judge accords each factor in aggravation and mitigation, and the resulting balance that is struck among them, depends on the circumstances of the case.
 People v. Dizon
, 297 Ill. App. 3d 880, 890, 697 N.E.2d 780, 787 (1998).  Thus, it has repeatedly been held that the determination of an appropriate sentence is uniquely a matter best left to the trial judge, who is in a superior position to make a reasoned determination regarding punishment.  
People v. Cabrera
, 116 Ill. 2d 474, 494, 508 N.E.2d 708 (1987).

Nonetheless, defendant now further contends that the sentence imposed by the trial judge was excessive and an abuse of discretion because defendant had not brought a weapon to the incident, the incident was a "domestic quarrel spun out of control," and there was mitigating evidence that defendant "was fleeing an armed attack."  We disagree.

The trial judge here was aware of and considered defendant's conduct in this case as well as the evidence in aggravation and mitigation.  In light of defendant's brutal conduct in this case, his lengthy criminal history, the necessity of deterring others from committing the same offense, the need for defendant's rehabilitation, and the necessity of protecting the public from defendant's criminal activity, defendant's sentence was not excessive.  Since there was no abuse of the trial court's discretion, the sentence is affirmed. 

Based on the foregoing, the judgment of the circuit court of Cook County is affirmed in all respects.

Affirmed.

O'MARA FROSSARD, P.J., and COHEN, J., concur.

FOOTNOTES
1:
As we shall explain, the weapon used by defendant is now categorized as a Class II weapon.