2025 IL App (4th) 250148

NOS. 4-25-0148, 4-25-0149, 4-25-0150 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 17, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Adams County |
| LEONARD D. SIMS, | ) | Nos.   24CF458 |
|     Defendant-Appellee. | ) | 24CF472 |
| | ) | 24CF512 |
| | ) | |
| | ) | Honorable |
| | ) | Holly J. Henze, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Doherty and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In each of the cases consolidated in this appeal, the State charged defendant, Leonard D. Sims, with unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2024)). Defendant moved to dismiss the charges on the grounds he was immune from prosecution for the charged offenses pursuant to section 5(c)(2) of the Overdose Prevention and Harm Reduction Act (Act) (410 ILCS 710/5(c)(2) (West 2024)). Following a hearing, the circuit court granted defendant's motion and dismissed the charges. The State moved to reconsider the dismissal, which the court denied. The State appeals, arguing the court erred in dismissing the charges because defendant failed to prove the used drug consumption paraphernalia in which the methamphetamine was found came from a program established under the Act. For the reasons that follow, we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3                                        A. Charges

¶ 4          In July and August 2024, the State charged defendant with multiple counts of unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2024)), a Class 3 felony. The State alleged defendant committed the charged offenses in that, on or about May 23, July 11, and July 31, 2024, he possessed less than five grams of a substance containing methamphetamine.

¶ 5                                    B. Motion to Dismiss

¶ 6          On November 14, 2024, defendant filed a motion to dismiss the charges pursuant to section 114-1(a)(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(3) (West 2024)), contending he was immune from prosecution for the charged offenses pursuant to section 5(c)(2) of the Act (410 ILCS 710/5(c)(2) (West 2024)). Defendant alleged the charges stemmed from the discovery of residual amounts of methamphetamine within used drug consumption paraphernalia. Defendant cited police reports for this allegation, which, we note, are not part of the record. Defendant also alleged he had been enrolled in a harm reduction program since March 1, 2022. For this allegation, defendant cited an affidavit of Dr. Jonna J. Cooley, which he attached to his motion. In the affidavit, Dr. Cooley avers (1) she is the executive director of the Phoenix Center; (2) the Phoenix Center operates an authorized harm reduction program; (3) defendant has been an active participant with the Phoenix Center's harm reduction program since March 1, 2022; and (4) a letter stating defendant has been engaged in the Phoenix Center's harm reduction program since March 1, 2022, was sent to defendant's counsel on August 2, 2024. Based upon these allegations, defendant argued he was immune from prosecution for the charged offenses because of his active participation in a harm reduction program.

¶ 7                            C. Hearing on the Motion to Dismiss

¶ 8          Also on November 14, 2024, the circuit court held a hearing on defendant's motion to dismiss the charges. As a factual matter, defendant asserted, and the State did not dispute, the police reports showed the charges against him were based upon the discovery of "residue within paraphernalia." Defendant also asserted, which again the State did not dispute, the affidavit attached to his motion, as well as a letter to defendant's counsel that was previously made part of the record, showed he was engaged in a harm reduction program at the Phoenix Center. Based upon these facts, defendant argued the charges should be dismissed because he was immune from prosecution for the charged offenses pursuant to section 5(c)(2). The State, in response, argued defendant was not entitled to a dismissal of the charges because he had not shown, as required by section 5(c)(2), the "items in question" were obtained from or returned to a program established under the Act. In reply, defendant argued he sufficiently established immunity by presenting evidence of his participation in a harm reduction program, and it was the State's burden to "overcome his immunity" and show the items were not obtained from or returned to a program. Before taking the matter under advisement, the court asked if "the syringes or the needles [from the Phoenix Center] have any identifying information on them," to which defendant's counsel stated:

> "I will tell the Court I spoke with Ms. Cooley today—or Dr. Cooley today. I asked specifically about the types of materials they provide. She did not give me any indication as to, like, I guess what I would call labeling or anything like that. But [defendant] I will tell the Court indicates for what that's worth that there is no specific identifiers or labeling or anything that denotes this is a Phoenix Center pipe as opposed to a pipe purchased in some other capacity."

¶ 9                              D. Dismissal of the Charges

¶ 10     On November 21, 2024, the circuit court entered a written order granting defendant's motion and dismissing the charges. The court found the "legislative intent of [section 5 of the Act] is clearly safety and not prosecution." The court further, after quoting section 5(c)(2), found:

> "Pursuant to plain meaning, at such time when an individual is found to be in possession of drug consumption paraphernalia with residual amounts of a controlled substance contained therein and who provides credible evidence of active participation in the program no charges nor further prosecution shall ensue and no further burden of proof shall be placed on a defendant."

The court concluded, based upon the undisputed fact that the charges against defendant stemmed from the alleged possession of residual amounts of methamphetamine contained within used drug consumption paraphernalia and the affidavit and letter showing defendant was an active participant in a harm reduction program, defendant was immune from prosecution for the charged offenses pursuant to section 5(c)(2).

¶ 11                              E. Motion to Reconsider

¶ 12     In December 2024, the State filed a motion to reconsider the dismissal of the charges. The State argued the circuit court, in reaching its decision, either failed to account for the requirement under section 5(c)(2) that the paraphernalia in question be shown to have been obtained from or returned to a program established under the Act or failed to hold defendant to the burden of proving this requirement.

¶ 13                           F. Denial of the Motion to Reconsider

¶ 14     In January 2025, the circuit court denied the State's motion to reconsider the dismissal of the charges after a hearing. While the parties largely stood on their prior oral and

- 4 -

written arguments at the hearing, defendant also argued the State's position that defendants would have to prove the paraphernalia in question was obtained from or returned to an authorized harm reduction program raised constitutional concerns, as it required defendants to implicate themselves in criminal conduct by "testify[ing] that the paraphernalia that they possessed came from a harm reduction program."

¶ 15        This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17        On appeal, the State argues the circuit court erred in dismissing the charges because defendant failed to prove the used drug consumption paraphernalia in which the methamphetamine was found came from a program established under the Act. Specifically, the State asserts defendant was required under section 5(c)(2) to make at least an initial showing that the paraphernalia in question came from a program established under the Act, which he failed to do.

¶ 18        Defendant, in response, argues the circuit court properly dismissed the charges because he demonstrated his active participation in a harm reduction program. Specifically, defendant contends evidence of active participation in a harm reduction program is sufficient to satisfy a defendant's initial burden of proof with respect to a claim of immunity under section 5(c)(2).

¶ 19        At issue in this appeal is whether evidence of active participation in a harm reduction program is sufficient to make the requisite minimum showing to entitle a defendant to immunity under section 5(c)(2). This issue, as the parties seem to agree, presents a question of law. Accordingly, *de novo* review is appropriate. See *People v. Smollett*, 2024 IL 130431, ¶ 22 ("A reviewing court considers a [circuit] court's ultimate ruling on a motion to dismiss charges under an abuse-of-discretion standard, but where the issues present purely legal questions, the standard

of review is *de novo*.”).

¶ 20　　　To resolve the issue presented, we begin with a review of the relevant statute providing immunity. As our supreme court has stated, “The best indicator of what the legislature intended in enacting a statute is simply the plain and ordinary meaning of the terms used by the legislature in the statute itself.” *People v. Torres*, 2024 IL 129289, ¶ 31. Indeed, when the language chosen by the legislature is clear and unambiguous, we must “give effect to the statute as written and may not alter the legislature’s intent by departing from the clear and unambiguous statutory language.” *Id.*

¶ 21　　　Section 5 of the Act, which became effective on August 9, 2019, allows for any organization, entity, or person “that promotes scientifically proven ways of mitigating health risks associated with drug use and other high-risk behaviors” to “establish and operate a needle and hypodermic syringe access program.” 410 ILCS 710/5(a) (West 2024). The objectives of any program established under section 5 must be to (1) reduce “the spread of HIV, AIDS, viral hepatitis, and other bloodborne diseases”; (2) reduce “the potential for needle stick injuries from discarded contaminated equipment”; and (3) facilitate “connections or linkages to evidence-based treatment.” *Id.* § 5(a)(1)-(3).

¶ 22　　　In order to achieve the objectives of a program established under section 5, the following must be provided by the program: (1) “Disposal of used needles and hypodermic syringes”; (2) “Needles, hypodermic syringes, and other safer drug consumption supplies, at no cost and in quantities sufficient to ensure that needles, hypodermic syringes, or other supplies are not shared or reused”; (3) “Educational materials or training on *** overdose prevention and intervention[ ] and *** the prevention of HIV, AIDS, viral hepatitis, and other common bloodborne diseases resulting from shared drug consumption equipment and supplies”;

(4) "Access to opioid antagonists approved for the reversal of an opioid overdose, or referrals to programs that provide access to opioid antagonists approved for the reversal of an opioid overdose"; (5) "Linkages to needed services, including mental health treatment, housing programs, substance use disorder treatment, and other relevant community services"; (6) "Individual consultations from a trained employee tailored to individual needs"; (7) "If feasible, a hygienic, separate space for individuals who need to administer a prescribed injectable medication that can also be used as a quiet space to gather composure in the event of an adverse on-site incident, such as a nonfatal overdose"; and (8) "If feasible, access to on-site drug adulterant testing supplies." *Id.* § 5(b). In addition, since January 1, 2025, any program must also offer, "If feasible, access to fentanyl test strips to test for the presence of fentanyl, a fentanyl analog, or a drug adulterant within a controlled substance." Pub. Act 103-980 (eff. Jan. 1, 2025) (adding 410 ILCS 710/5(b)(9)).

¶ 23       Section 5 grants individuals who are involved in a program established thereunder immunity from prosecution for certain criminal offenses. 410 ILCS 710/5(c) (West 2024). It states the following:

> "(c) Notwithstanding any provision of the Illinois Controlled Substances Act [(720 ILCS 570/1 *et seq.* (West 2024)), the Drug Paraphernalia Control Act [(720 ILCS 600/1 *et seq.* (West 2024))], or any other law, no employee or volunteer of or participant in a program established under this Act shall be charged with or prosecuted for possession of any of the following:
>
> > (1) Needles, hypodermic syringes, or other drug consumption paraphernalia obtained from or returned, directly or indirectly, to a program established under this Act.
> >
> > (2) Residual amounts of a controlled substance contained in used

needles, used hypodermic syringes, or other used drug consumption paraphernalia obtained from or returned, directly or indirectly, to a program established under this Act.

(3) Drug adulterant testing supplies obtained from or returned, directly or indirectly, to a program established under this Act or a pharmacy, hospital, clinic, or other health care facility or medical office dispensing drug adulterant testing supplies in accordance with Section 10. This paragraph also applies to any employee or customer of a pharmacy, hospital, clinic, or other health care facility or medical office dispensing drug adulterant testing supplies in accordance with Section 10.

(4) Any residual amounts of controlled substances used in the course of testing the controlled substance to determine the chemical composition and potential threat of the substances obtained for consumption that are obtained from or returned, directly or indirectly, to a program established under this Act. This paragraph also applies to any person using drug adulterant testing supplies procured in accordance with Section 10 of this Act." *Id.*

In addition, section 5 grants immunity from civil liability to law enforcement officers who are involved with arresting or charging an individual who is later determined to be immune from prosecution. *Id.*

¶ 24          Finally, section 5 sets forth certain reporting requirements for a program established thereunder. *Id.* § 5(d). It requires any organization to submit to the Illinois Department of Public Health the following information: (1) "the name of the organization, agency, group, person, or

entity operating the program"; (2) "the areas and populations to be served by the program"; and (3) "the methods by which the program will meet the requirements of subsection (b) of this Section." *Id.*

¶ 25        In this case, the elements to establish immunity under section 5(c)(2) are undisputed. Those elements are as follows: (1) the individual is a participant in a program established under the Act; (2) the individual is alleged to have possessed residual amounts of a controlled substance in used drug consumption paraphernalia; and (3) the used drug consumption paraphernalia was "obtained from or returned, directly or indirectly," to a program established under the Act. *Id.* § 5(c)(2). It is also undisputed, although not explicitly set forth in the statute, a defendant bears the initial burden of establishing immunity under section 5(c)(2). See *People v. O'Malley*, 2021 IL App (5th) 190127, ¶ 27 ("[C]ourts have consistently placed at least the threshold burden on the proponent of an immunity claim."); 725 ILCS 5/114-1(a)(3) (West 2024) (providing for the dismissal of a charge upon the written motion of a defendant on the grounds the defendant has immunity from prosecution for the offense charged).

¶ 26        The dispute in this case concerns whether defendant satisfied his initial burden to establish immunity under section 5(c)(2). Defendant contends the initial burden may be satisfied by the introduction of evidence of active participation in a harm reduction program. We reject defendant's contention. Like an affirmative defense, we find, to satisfy the initial burden of establishing immunity under section 5(c)(2), there must be at least some evidence presented as to *each* of the elements of the immunity claim. See *People v. Dunlap*, 315 Ill. App. 3d 1017, 1025 (2000) (noting at least some evidence as to each of the elements of an affirmative defense must be presented to raise the defense); *O'Malley*, 2021 IL App (5th) 190127, ¶ 27 (equating a claim of immunity with an affirmative defense). While evidence of active participation in a harm reduction

program may be sufficient to show an individual is a participant in a program established under the Act, it does not show the paraphernalia in question was "obtained from or returned, directly or indirectly," to a program established under the Act. 410 ILCS 710/5(c)(2) (West 2024).

¶ 27          Defendant suggests, as he did in his response to the State's motion to reconsider, requiring defendants to present evidence in addition to active participation in a harm reduction program raises constitutional concerns as it *requires* defendants to waive their rights against self-incrimination and testify. We are not convinced. In its opening brief on appeal, the State suggested ways in which a defendant could make the requisite showing without testifying. Specifically, the State suggested a defendant could present testimony from an individual associated with a harm reduction program that (1) the paraphernalia in question was of "the brand or variety" administered by the program or (2) the records from the program confirmed the distribution of the specific paraphernalia to the defendant. Based upon the record presented, we cannot find that requiring additional evidence to satisfy the initial burden *requires* the testimony of a defendant.

¶ 28          Because there has been no evidence presented to show the paraphernalia in question was "obtained from or returned, directly or indirectly," to a program established under the Act (*id.*), we conclude defendant failed to make the requisite minimum showing to entitle him to immunity under section 5(c)(2). It is, therefore, necessary to reverse the circuit court's dismissal of the charges and remand for further proceedings. On remand, defendant may pursue his claim of immunity with additional evidence if he so chooses.

¶ 29          As a final matter, defendant argues this court should construe section 5(c)(2) to read that immunity can be established when a defendant is found to be in possession of used drug consumption paraphernalia which is "returnable" to a program established under the Act. He suggests the legislature "did not intend for program participants to face criminal charges for being

caught with paraphernalia on their way to returning it to a program." To address defendant's argument would be to render an advisory opinion, which we may not do. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) ("As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided."). As defendant acknowledges in a footnote of his brief, "there is no evidence [he] was returning his paraphernalia to [the Phoenix Center] at the time he was arrested." Accordingly, it would be advisory to address defendant's argument when there are no facts to support it.

¶ 30                                    III. CONCLUSION

¶ 31          For the reasons stated, we reverse and remand for further proceedings.

¶ 32          Reversed and remanded.

*People v. Sims*, 2025 IL App (4th) 250148

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, Nos. 24-CF-458, 24-CF-472, 24-CF-512; the Hon. Holly J. Henze, Judge, presiding. |
| **Attorneys for Appellant:** | Todd R. Eyler, State's Attorney, of Quincy (Patrick Delfino, David J. Robinson, and Matthew S. Goldman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Catherine K. Hart, and Lucas J. Hall, of State Appellate Defender's Office, of Springfield, for appellee. |